Vera BURNETT, Plaintiff-Appellant,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.

No. 80–7155.

United States Court of Appeals, Fifth Circuit. Unit B

May 1, 1981. Rehearing Denied June 15, 1981.

Brian Rogal, Savannah, Ga., W. David Arnold, Atlanta, Ga., Phyllis J. Holmen, Douglasville, Ga., for plaintiff-appellant.

Henry Whisenhunt, Jr., Asst. U.S. Atty., Augusta, Ga., for defendant-appellee.

Before HILL, FAY and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

The appellant, Vera Burnett, urges us to declare unconstitutional Section 416 (h)(1)(B), 42 U.S.C., which provides mother's benefits to "deemed widows," but terminates these benefits once a "legal widow" applies for benefits. Finding the statutory scheme rational, we affirm the trial court.

## FACTS

In 1934, Willie Burnett, the deceased wage earner, married Ella Marie Rawls. Shortly after their marriage, they separated and Rawls moved to New York. Their marriage was never dissolved by divorce. In March 1946, Willie Burnett married Vera Burnett. At the time of her marriage, Vera Burnett knew Willie Burnett had been married previously, but knew no details of the former marriage. Willie Burnett assured her that he was legally capable of entering into the marriage. They lived together, with their four children, for twenty-five years until his death on December 20, 1971. On the date of death, two of their children were still minors.

Shortly after Willie Burnett's death, Vera Burnett began receiving mother's benefits and the two minor children began receiving children's benefits. The children's entitlement to benefits were not questioned by the Social Security Administration, and their entitlements are not the subject of this dispute. In August, 1975, the Social Security Administration notified Vera Burnett that Ella Marie Rawls (now known as Marie Coleman) had applied for widow's benefits. Ella Marie Rawls denied that she and Willie Burnett were divorced, and Vera Burnett was unable to prove that any divorce had occurred. The Social Security Administration terminated Vera Burnett's mother's benefits. Vera Burnett contested this termination of benefits through the administrative appeal procedure, but the termination of benefits was affirmed. The Secretary rendered the final decision on December 15, 1976.

## THE STATUTORY SCHEME

Under section 202(g) of the Social Security Act, 42 U.S.C. § 402(g)(1),[1] a widow or divorced mother caring for her child who is also the child of the deceased fully insured father may receive mother's benefits. Widow is generally defined as the surviving wife of the deceased insured man.

Section 216(h)(1)(B) of the Act, 42 U.S.C. § 416(h)(1)(B),[2] however, provides that a

1. 42 U.S.C. § 402(g)(1), provides, in pertinent part:

> The widow and every surviving divorced mother ... of an individual who died a fully or currently insured individual ... shall ... be entitled to a mother's insurance benefit ....

2. 42 U.S.C. § 416(h)(1)(B), provides, in pertinent part:

> In any case where under subparagraph (A) an applicant is not (and is not deemed to be) the ... widow, ... of a fully or currently insured individual ... but is established to the satisfaction of the Secretary that such applicant in good faith went through a marriage ceremony with such individual resulting in a purported marriage between them

which, but for a legal impediment not known to the applicant at the time of such ceremony, would have been a valid marriage, and such applicant and the insured individual, were living in the same household at the time of death of such insured individual ... then, for purposes of subparagraph (A) and subsections (b), (c), (f), and (g) of this section, such purported marriage shall be deemed to be a valid marriage .... The entitlement to a monthly benefit under subsections (b), (c), (e), (f), or (g) of section 402 of this title, based on the wages and self-employment income of such insured individual, of a person who would not be deemed to be a ... widow ... of such insured individual but for this subparagraph, shall end with the month before the month (i) in which the Secretary

woman who is not the legal widow of the deceased wage earner may receive mother's benefits if the woman "went through a marriage ceremony with" the deceased wage earner "which but for a legal impediment not known to the applicant at the time of the marriage" would have constituted a valid marriage. Section 42 U.S.C. § 416(h)(1)(B) requires the applicant and the deceased wage earner to be "living in the same household" at the time of the wage earner's death. While providing for mother's benefits to "deemed widows," section 416(h)(1)(B) states that the deemed widow's entitlement to mother's benefits shall terminate once the legal widow applies for widow's benefits.

Thus, under section 416(h)(1)(B), Vera Burnett was eligible as a "deemed widow" to collect mother's benefits despite the fact that her marriage to Willie Burnett was invalid. Once Ella Marie Rawls appeared to claim widow's benefits, however, Vera Burnett's entitlement to mother's benefits terminated.

## ISSUES

The issues to be decided on this appeal are (1) whether Vera Burnett, or Ella Marie Rawls is the "legal" widow of Willie Burnett for Social Security purposes, and (2) whether the due process clause of the fifth amendment to the United States Constitution is violated by the provision in the Social Security Act which requires that mother's benefits received by a "deemed" surviving spouse must be terminated when a "legal" surviving spouse applies for widow's benefits.

## I.

Vera Burnett argues that she is entitled to mother's benefits as the legal widow of Willie Burnett. She explains that Georgia follows the general rule that if one party to a marriage has a previous unresolved marriage, then that party is unable to contract a subsequent valid marriage, and the later marriage is void from the beginning. She points out, however, that in 1952, the Georgia Legislature, in promulating Georgia Code Annotated section 53–601,[3] carved out an exception to the common-law rule. Under section 53–601, a marriage otherwise void because of a legal impediment, may not be annulled where a child has been born or will be born of the marriage. Under this statute, if a child has been born of the marriage, the proper procedure is to obtain a divorce rather than an annulment. Ga. Code Ann. § 53–602.[4] From this statute, plaintiff postulates that the legislature intended to confer validity upon this category of marriages otherwise void because of a legal impediment. Thus, plaintiff concludes that she is entitled to mother's benefits as the legal widow of Willie Burnett, rather than as a "deemed widow."

As support for her argument, plaintiff directs our attention to a Georgia Supreme Court case which construed sections 53–601 and 53–602. In *Wallace v. Wallace,* 221 Ga. 510, 145 S.E.2d 546 (Ga.1965), the Georgia Supreme Court stated:

A decree of nullity or an annulment under law is the method of declaring void a marriage which was void at the outset for some reason recognized either in equity or at law. Historically in this State, the availability of divorce presupposes the existence of a valid marriage. Thus, it may be reasonably inferred that the legislature intended to confer validity upon

certifies, pursuant to section 405(i) of this title, that another person is entitled to a benefit under subsection (b), (c), (e), (f), or (g) of section 402 of this title on the basis of the wages and self-employment income of such insured individual, if such other person is (or is deemed to be) the ... widow ... of such insured individual under subparagraph (A) ....

**3.** Georgia Code Annotated section 53–601 provides:

Annulment of marriages now or hereafter declared void by law may be granted by the superior court judges of this State, except that annulments may not be granted in instances where children are born or to be born as a result of the marriage.

**4.** Ga. Code Ann. § 53–602 provides:

Parties who enter into such marriages shall have the right to file a petition for annulment or a petition for divorce, if grounds for divorce exist.

marriages otherwise void for non age, fraud, etc., where children were born or to be born from such marriages in that they can be dissolved only by divorce. [Citations omitted.]

*Wallace v. Wallace*, at 548. Plaintiff concludes that under Georgia law, her marriage to Willie Burnett was valid. Since state law determines whether one party is legally married to another, this court must determine that appellant is the legal widow of Willie Burnett under Georgia law.

▇ In addressing plaintiff's ingenious argument, we note initially that under 42 U.S.C. § 416(h)(1)(A),[5] state law determines whether a marriage is valid or not. In Georgia, a person who enters into a marriage that is void because of a legal impediment must seek a divorce in order to terminate the purported marriage when children are born or are to be born of the marriage. Traditionally, a divorce proceeding seeks to terminate a valid marriage. Thus it appears that section 53–601 confers validity upon an otherwise void marriage. Under closer scrutiny, however, section 53–601 does not render legitimate an otherwise void marriage for the purpose asserted in this case.

▇ Section 53–601 was promulgated for the purpose of protecting the children of an otherwise void marriage. In other words, the statute, by requiring the parties to an otherwise void marriage to seek a divorce rather than an annulment, prevents those parties from bastardizing children which are a product of the marriage. This purpose was recognized by the Georgia Supreme Court in *Wallace v. Wallace*. In that case, the court stated:

> In our view of the annulment statute the legislature sought thereby to protect the children of marriages previously considered void under the rule in *Eskew v. Eskew*, supra, by prohibiting annulment and thus guaranteeing their legitimacy. Consistent with this purpose, the legisla-

ture provided that such marriages could be dissolved only by divorce.

. . . . .

> This court has striven vigorously to protect children of marriages where the parties sought an annulment which would, of course, bastardize the children, by denying that relief and leaving them to the only alternative remedy, divorce. The legislature has done this by express language in the annulment statute. [Citations omitted.]

*Wallace v. Wallace*, at 548.

Likewise, in *Riddle v. Riddle*, 240 Ga. 515, 241 S.E.2d 214 (Ga.1978), the Georgia Supreme Court acknowledged that the "purpose of the 1952 annulment statute was to protect children of marriages previously considered void" under decisions of the Georgia courts. *Riddle*, at 215.

Thus, under the Georgia cases construing section 53–601, this category of void marriages is considered valid for the purpose of protecting the children born of the marriage. It cannot, however, be said that section 53–601 confers validity on an otherwise void marriage for the purpose of permitting a spouse to such marriage to receive benefits that only inure to a husband or wife of a legal marriage. Such a construction would not promote the purpose of section 53–601. In other words, denying a spouse the ability to receive benefits as a legal widow does not cast doubt on the legitimacy of a child born of a void marriage. Furthermore, to permit such a spouse to receive benefits intended to inure only to the benefit of a legal widow would wreak havoc to any scheme set up to protect a surviving spouse. For example, under appellant's construction of section 53–601, both appellant and Ella Marie Rawls are eligible to inherit Willie Burnett's bounty as his legal widows. *See* Ga. Code Ann. § 113–903.[6] Surely, the Georgia Legisla-

---

**5.** 42 U.S.C. § 416(h)(1)(A), provides, in pertinent part:

> An applicant is the . . . widow . . . of a fully or currently insured individual for purposes of this subchapter if the . . . courts of the State in which he was domiciled at the time

of death . . . would find that such applicant and such insured individual were validly married . . . at the time he died . . . .

**6.** Ga. Code Ann. § 113–903 provides, in pertinent part:

ture did not intend such a result in enacting section 53–601. Consequently, we reject plaintiff's construction of section 53–601 under the circumstances of this case.

## II.

Appellant next contends that 42 U.S.C. § 402(g)(1)(B), which terminates benefits to a deemed widow when the legal widow applies for benefits is irrational and unconstitutional. Appellant's argument is in two parts. First, she argues that the statute is unconstitutionally irrational because, under the statutory scheme, if Vera Burnett had divorced Willie Burnett she would have been entitled to divorced mother's benefits upon his death, regardless of Ella Marie Rawls's subsequent certification for widow's benefits. Secondly, appellant asserts that the statute is unconstitutionally irrational because while recognizing that a deemed widow is in need of benefits, the statute provides that the benefits must be terminated when the legal widow applies, thus ignoring the need originally acknowledged. Appellant therefore argues that the terminating provision totally frustrates the beneficiant purposes of the deemed widow provision.

■ The standard by which we must assess any constitutional challenge to social welfare legislation was stated by the Supreme Court in *Mathews v. DeCastro*, 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976).

Governmental decisions to spend money to improve the general public welfare in one way and not another are "not confided to the courts. The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment." In enacting legislation of this kind a government does not deny equal protection "merely because the classifications made by its laws are imperfect. If the classification has 'some reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' "

To be sure, the standard by which legislation such as this must be judged "is not a toothless one." But the challenged statute is entitled to a strong presumption of constitutionality. "So long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket."

*Mathews,* at 185, 97 S.Ct. at 434 (citations omitted).

■ Applying this standard, the trial court, in addressing the first part of appellant's argument, stated the issue:

The difficult question posed by Vera Burnett is how Congress can constitutionally allow a divorced mother to continue receiving mother's benefits, even in a case where a legal widow enjoys widow's benefits, while at the same time denying these benefits to a woman who has, in good-faith, gone through a marriage ceremony and with whom the deceased was living at the time of his death.

In resolving this question, the trial court found:

As Congress was concerned with preventing payment of duplicate, simultaneous

---

The following rules shall determine who are the heir at law of a deceased person:

1. Upon the death of the husband without lineal descendants, the wife is his sole heir, and upon the payment of his debts, if any, may take possession of his estate without administration.
2. If, upon the death of the husband, there are children, or representatives of deceased children, the wife shall have a child's part, unless the shares exceed five in number, in which case the wife shall have one-fifth part of the estate. No election by the wife shall be necessary to

entitle her to such portion of the husband's estate, but she shall be entitled thereto as a matter of law, unless she shall, within 12 months from the death of the husband, notify the administrator that she elects to take her dower, or, if there be no administrator, file such notice in the office of the judge of the probate court of the county. If such notice is given, the wife shall have no interest in the realty beyond her dower rights, but such election shall not affect her rights under this section with respect to the personal property of the decedent.

payments, it was not patently arbitrary to conclude that legislation must be addressed to the situation where a legal widow and good-faith wife claim the fund at the same time while not so providing in the situation where a divorced mother and legal widow make simultaneous claims. Congress could rationally conclude that the legal widow would probably be older than the good-faith wife, who has children younger than 18 and who lived with the deceased at the time of his death. This situation could be viewed as giving rise to a claim for widow's benefits at the same time the good-faith wife is receiving mother's benefits. This could have appeared more likely than the situation in which man divorces his wife, and marries a woman old enough to be eligible for widow's benefits while his children of the former marriage are younger than eighteen.

We agree with the trial court's reasoning and therefore adopt it.

With regard to the second part of appellant's argument, Congress initially provided for payments to the legal widow and a divorced mother of the deceased wage earner. Recognizing, however, the hardship in cases where a good-faith but invalid marriage had existed, Congress also provided for payments to deemed widows. Payments to deemed widows, however, were conditioned upon a legal widow not being entitled to payments. Essentially, appellant's complaint regarding this scheme is that it is irrationally under-inclusive. We disagree.

In relieving perceived hardships Congress is not required to totally eliminate hardships suffered by a category of persons. Indeed, the legislature may "take one step at a time." *Williamson v. Lee Optical*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). Empirical calculations are for Congress. *Mathews v. Lucas*, 427 U.S. 495, 515, 96 S.Ct. 2755, 2767, 49 L.Ed.2d 651 (1976).

Finally, we note, as the trial court did, that the "distribution of benefits is inescapably bound to the taxing scheme which supports it—both sides of the equation [are]

fully in the arena proper for legislative action."

## CONCLUSION

We hold: (1) under Georgia law, Vera Burnett is not the legal widow of Willie Burnett for the purpose of receiving widow's benefits under the statutory scheme at issue here and, (2) the statutory scheme is not unconstitutionally irrational. Accordingly, the trial court's order granting defendant's motion for summary judgment is affirmed.

AFFIRMED.