Betty Lou **MARTIN**, Plaintiff-Appellant,

v.

Patricia Roberts **HARRIS**, Secretary of Health and Human Services, Defendant-Appellee.

No. 80–1314.

United States Court of Appeals, Tenth Circuit.

Argued May 15, 1981.

Decided June 25, 1981.

McKay, Circuit Judge, dissented and filed opinion.

§ 1022(a)(1) in a civil action. *See* 29 U.S.C.A. § 1132(a)(3).

Kim L. Morris, and John R. Holland, Denver, Colo., for plaintiff-appellant.

Lillie Price, Dept. of Health and Human Services, Baltimore, Md. (Alice Daniel, Asst. Atty. Gen., Washington, D. C., Randolph W. Gaines, Chief of Litigation, Baltimore, Md. and Joseph F. Dolan, U. S. Atty., Denver, Colo.), for defendant-appellee.

* Honorable Earl O'Connor, Judge, U. S. District Court for the District of Kansas, sitting by designation.

Before DOYLE, McKAY, Circuit Judges, and O'CONNOR,* District Judge.

WILLIAM E. DOYLE, Circuit Judge.

The case before us is an appeal from a final order of the United States District Court for the District of Colorado, which order denied appellant widow's disability benefits under Title II of the Social Security Act, more specifically 42 U.S.C. § 416(h)(1)(B). The issue in this case is whether, under the statutes as revised, the so-called deemed widow statute, plaintiff-appellant is entitled to receive benefits from the account of Mr. Martin, deceased, notwithstanding that there was not a valid marriage between them. The evidence shows that there was an impediment to Mr. Martin's entering into a marriage; he had not divorced his first wife. Solution of the problem calls for consideration of the terms of the statutes and the construction.

The application by appellant for widow's benefits on the earnings of Elmer Martin occurred on May 25, 1973. Appellant had ceremonially married Martin on May 6, 1969. He died on May 26, 1972. Appellant's application was initially denied upon a finding that she and Mr. Martin did not live in the same household at the time of his death. However an administrative law judge overturned that decision and found that appellant was eligible for deemed widow's disability benefits pursuant to 42 U.S.C. § 416(h)(1)(B), which statute provides as follows:

(B) In any case where under subparagraph (A) an applicant is not (and is not deemed to be) . . . the widow . . . of a fully or currently insured individual, or where under subsection . . . (c) . . . such applicant is not the . . . widow . . . of such individual, but it is established to the satisfaction of the Secretary that such applicant in good faith went through a marriage ceremony with such individual resulting in a purported marriage be-

tween them which, but for a legal impediment not known to the applicant at the time of such ceremony, would have been a valid marriage, and such applicant and the insured individual were living in the same household at the time of the death of such insured individual . . . then, for purposes of subparagraph (A) and subsection (c) . . . such purported marriage shall be deemed to be a valid marriage . . . [F]or purposes of this subparagraph, a legal impediment to the validity of a purported marriage includes only an impediment (i) resulting from the lack of dissolution of a previous marriage or otherwise arising out of such previous marriage or its dissolution . . . .

Appellant received social security deemed widow's benefits under the statute until the Appeals Council of the Social Security Administration reopened her case on Sept. 6, 1977. The holding of the Council was that appellant was precluded from receiving such benefits by reason of the existence of one Jennie Lamore, a prior "legal widow" of Mr. Martin, who had previously received benefits based upon Mr. Martin's earnings. Martin had never been legally divorced from Jennie. She had been previously awarded wife's insurance benefits on Mr. Martin's social security account, and after his death on May 26, 1972, drew widow's insurance benefits on his account until her remarriage on October 18, 1972. At the time that appellant applied for widow's benefits on May 23, 1973, Jennie had remarried and hence was not then receiving social security benefits from Mr. Martin's account.

The Appeals Council's decision to deny appellant widow's benefits was based on what is termed the "exclusion clause" of the deemed widow statute, part of which is set forth above. This clause provides:

. . . The provisions of the preceding sentence shall not apply (i) if another person is or has been entitled to a benefit under subsection . . . (e) of § 402 on the basis of the wages and self-employment income of such insured individual and such other person is (or is deemed to be) . . . a widow of such insured individual under

subparagraph (A) at the time such applicant files the application . . .

Following the entry of the denial of benefits by the Appeals Council appellant filed this action in the district court seeking to obtain a reversal and to enjoin the appellee from terminating her assistance. On October 28, 1977 the district court granted appellant's motion for a preliminary injunction and ordered appellee to continue paying the benefits to appellant during the pendency of the suit.

The district court remanded the case to the Secretary for an administrative determination of the meaning of the deemed widow's statute in light of the social policy behind it to determine whether appellant was a deemed widow according to the statute. The case was assigned to an administrative law judge who heard oral arguments and again found appellant was a deemed widow entitled to benefits. Again the Appeals Council reversed. The district court upheld the decision of the Appeals Council. This appeal has been taken from that denial and affirmance.

There is little dispute about the essential facts. Thus, there is no dispute as to the fact that appellant would be entitled to deemed widow's benefits were it not for the fact that Jennie Lamore was alive and previously had received benefits from Martin's social security account. It is also conceded that appellant acted in good faith in going through this marriage ceremony with Martin. She was unaware of any legal impediment to the marriage. She was living with Martin at the time of his death.

### The Ruling of the District Court

It was held by Judge Finesilver that jurisdiction to hear the case was grounded on 42 U.S.C. § 405(g).

The court held that appellant was not the deemed widow of Elmer Martin within the meaning of § 416(h)(1)(B). The court stated that in enacting the deemed widow's statute Congress intended to create an entitlement to benefits in those women whose marriages to a wage earner were not entirely valid; that the enactment was in

recognition of the hardship which the technicalities of state marriage laws often produced. The court went on to find that the plain meaning of § 416(h)(1)(B), however, did not evidence a scheme for successive entitlements of both legal widows and deemed widows under a single wage earner's account; that Ms. Lamore who had previously received benefits from Martin's account, was a widow under the law, and, thus, the present Mrs. Martin was precluded from also receiving such benefits.

The court held that the fact that Ms. Lamore was remarried at the time that Mrs. Martin applied for widow's benefits did not change Ms. Lamore's status as a legal widow of Mr. Martin within the meaning of the statute. The reasoning was that once Ms. Lamore's entitlement became vested, she could not be later divested of that status even by her remarriage; rather she would continue to be Martin's legal widow should she be in a position to apply for benefits once again.

The district court further held that the provisions of Title II which regulate a deemed widow's entitlement to benefits are not out of harmony with the equal protection guarantees of the due process provision of the Fifth Amendment. The court held that it is constitutionally sufficient that Congress has expressed a legitimate interest in having the wage earner's account preserved for the benefit of the legal widow; that a legislative preference for a wage earner's legal widow, as opposed to a deemed widow, did not reflect an odious discrimination. The conclusion was that the Act rationally provided that where there is no longer any need to preserve the account for the legal widow's use, or where the legal widow has not demonstrated a desire to draw on the funds, the deemed widow is entitled to the benefits.

### The Merits

Numerous points are tendered by the appellant on review, including the constitutional matter just described. However, the major issue concerns the question of whether Ms. Lamore was the legal widow of Mr. Martin at the time Mrs. Martin applied for widow's benefits.

The main statutory provision to be considered is the exclusion clause which, as we have noted above, provides that the preceding paragraph pertaining to the rights of a deemed widow does not apply "if another person is or has been entitled to benefits under subsection (A) of § 402 on the basis of the wages and self-employment income of such insured individual and such other person is * * * a widow of such insured individual under subparagraph (A) at the time such applicant files the application." The significant words are "*is or has been entitled to.*" (emphasis supplied) These words are fully applicable here because another person, namely the present Ms. Jennie Lamore, has previously been entitled to a benefit under subsection (e). Thus Ms. Lamore qualified as a widow under the statute and the deemed widow is in a difficult position with regard to the attempt to have Widow Lamore's rights set aside.

The main argument of appellant is that under subparagraph (A) a person is a widow if the courts of the state in which the insured is domiciled at the time of death would find that the insured and that person were validly married at the time the insured died. Additionally, under 42 U.S.C. § 402(e)(1)(A), one of the eligibility requirements for the payment of widows benefits is that the applicant be unmarried. Therefore, appellant maintains that a legal widow loses her status as such once she remarried. This is not what the statute says, however.

Appellant also advances the argument that since there is presently no competition for the benefits between Jennie Lamore and Mrs. Martin, inasmuch as Ms. Lamore is concededly ineligible for benefits at the present time due to her remarriage, that the rationale of *Rosenberg v. Richardson,* 538 F.2d 487 (2nd Cir. 1976) should be applied.

In *Rosenberg* it was determined that the deemed widow's statute ought to be liberally construed and applied to achieve the overriding purpose of the Social Security

Act, which is to provide for working people and their dependents in their old age. In that case the court permitted the deemed widow to receive benefits where only a fraction of the widow's benefits were required to go to the deceased's legal widow under the statute. The rationale of *Rosenberg* has apparently been generally rejected by the other courts that have considered this. Indeed it was recently rejected by the Third Circuit in *Dwyer v. Califano*, 636 F.2d 908 (1980).

In *Dwyer v. Califano* the result was seemingly inequitable for the reason that the deceased had married wife number 1 in 1925. Wife number 1 left the deceased and their children in 1932 and later began to live with another man whose name she took, and with whom she had three children. The deceased was married by a minister to wife number 2 in 1945 and lived with her for over 31 years until his death in 1976. The second marriage was not valid inasmuch as the deceased had never been divorced from wife number 1. Nevertheless the Third Circuit held that it was obliged to follow the law; that wife number 1 as the legal widow of the deceased was entitled under the statute to the social security benefits of the deceased. The court gave effect to the terms of the statute and particularly to the part of subsection (e) which declared that if another person is or has been entitled to benefit under subsection (e) of § 402 on the basis of the wages and self-employment income of the insured such other person is deemed to be a widow of such insured individual. So the *Dwyer v. Califano* decision is a much harder case on the facts than the one which is before us. Here the deemed widow lived with the decedent for a period of approximately three years only. Nevertheless, the *Dwyer* court followed the law rather than the equities.

In *Rosenberg v. Richardson* the opinion of the Second Circuit recognized that the legal widow is in the preferential position. In the *Rosenberg* case, as in this case, a valid divorce was not obtained from Rosenberg's first wife. Rosenberg did get a Mexican divorce based upon information that Con-necticut recognized such a divorce decree. He went through a marriage ceremony with wife number 2 in that state. Subsequently he and his second wife proceeded to live in New York. Following his death, his second wife applied for widow's benefits. On this stated fact the Second Circuit gave a liberal interpretation to the statute and held generally in favor of the deemed widow in the ensuing contest. Notwithstanding that the first wife was receiving a small benefit, the court proceeded to allow the second wife to receive the balance payable. The first wife had a benefit of her own which resulted in her only receiving $1.40 and, thus, in reversing the district court, the Second Circuit reasoned that the words of the statute did not preclude the second wife from receiving the balance of the amount that would be ordinarily payable.

■ *Davis v. Califano*, 603 F.2d 618 (2nd Cir. 1979); and *Woodson v. Califano*, 455 F.Supp. 457 (S.D.Texas 1978) both are in accord with *Dwyer v. Califano* and have rejected the rule of *Rosenberg v. Richardson*. We agree with Dwyer and Woodson. As we view the wording of the statute and particularly the so-called "exclusion clause," it is inescapable that Congress intended to limit and restrict the deemed widow provision. The court in *Davis, supra*, gave full effect to the exclusion clause which we have already mentioned. 603 F.2d at 626. The court said:

> We stated earlier that the explicit language of Section 416(h)(1)(B) provides that the deemed spouse provision does not operate if a legal widow under Section 416(h)(1)(A) 'is or has been entitled to a benefit.' 42 U.S.C. § 416(h)(1)(B). The legislative history surrounding the amendment, although sparse, is instructive in resolving the conflict between the entitlement of a deemed spouse upon the entitlement of a legal spouse. The House Ways and Means Committee reported unequivocally: 'An applicant who went through a marriage ceremony with an insured individual will not be deemed to be the ... widow ... of that insured

individual if another person is or has been entitled to ... widow's ... benefits based on the insured individual's earnings and the other person has the status of ... widow ... of the insured individual at the time the application for benefits is filed.' H.Rep.No. 1799, 86th Cong., 2d Sess., reprinted in [1960] U.S.Code Cong. & Admin.News pp. 3608, 3684.

The same result was reached in *Woodson v. Califano, supra.*

In summary, then, we conclude that the language of the statute was intended to recognize the rights of a deemed widow, that is one who had been the victim of a marriage in which the partner was disqualified from entering. However, Congress has limited these rights to a very great extent. At all times Congress has recognized the superior right of the legal widow. The statutory language is straight forward and plain. It states that the deemed widow may not receive benefits if another person *is or has been* entitled to a benefit; these words leave no room for construction. Mrs. Lamore was entitled to benefits. Moreover she continues to have a conditional right to benefits. Accordingly our view is that the judgment of the district court should be affirmed on this point.

█ We have also considered the argument that there is a violation of the Fifth Amendment allegedly based on discrimination between a deemed widow and a legal widow. We are unable to perceive any discrimination. The classification was in no way arbitrary, and is fully justified. It is reasonable and logical to distinguish between a legal widow and one who has had the misfortune to enter into a marriage under conditions such as those shown. It is not unreasonable for the law to give priori-

ty to a legal widow. The statute is not unconstitutional. *See, e. g., Burnett v. Richard E. Schweiker,* 643 F.2d 1168 (5th Cir., 1981).

Finally, we have not suggested that this is a fraudulent type of condition or situation. Far from it. Furthermore, it is not the kind of a case which does not have equitable aspects and it is not easy to turn one's back on them. Nevertheless, these equities do not justify ignoring the plain and express words of the statute under the guise of giving effect to an unexpressed congressional objective which is in conflict with the words of the statute. So, with that, we conclude that the claim of Mrs. Martin has to be denied.

It is so ordered. The judgment of the district court is affirmed.

McKAY, Circuit Judge, dissenting:

Appellant is not one of those cheats, frauds, or freeloaders that it has become so popular to conjure up these days. To the contrary, she is one of those innocent victims of an erstwhile unknown legal impediment to an otherwise valid marriage, for whom Congress went to a lot of trouble when it passed the "deemed widow" statute, 42 U.S.C. § 416(h)(1)(B).[1] The problem with the majority's very restrictive construction of the statute is that it relies inordinately on two words at the expense of the plain meaning of the statute as a whole. If read out of context and without regard to the usual interpretive standards by which the courts seek to implement the will of Congress, those two words tend to emasculate the whole of the "deemed widow" statute, the purpose of which is to enable "deemed widows"[2] to collect Social Security benefits.

> ... which, but for a legal impediment not known to the applicant at the time of such ceremony, would have been a valid marriage, and such applicant and the insured individual were living in the same household at the time of the death of such insured individual....

The term "widow" as used throughout this opinion should be read generically to include "wife," "husband," and "widower," as those terms are used in § 416(h)(1)(B).

1. This statute applies both to widows and to widowers, making no distinctions on the basis of sex. But as usual, in terms of actual impact, women will bear the heavier burden of any restrictive construction of the benefit conferred by the statute.

2. Section 416(h)(1)(B) defines "deemed widow or widower" as one who

    in good faith went through a marriage ceremony ... resulting in a purported marriage

The exclusionary provision of § 416(h)(1)(B) states in pertinent part:

The provisions of the preceding sentence shall not apply . . . if another person *is or has been entitled to a benefit* under [42 U.S.C. § 402] and such other person is . . . [a] widow . . . of such insured individual under subparagraph (A) at the time such applicant files the application. . . .

(Emphasis added). The "is . . . entitled" language of this provision implements the congressional policy against double dipping into the federal treasury—a policy against permitting a deceased wage earner to have both a "legal widow" under § 416(h)(1)(A) and an array of "deemed widows," each of whom could draw full Social Security widow's benefits. To avoid such duplicate payments, Congress added to § 416(h)(1)(B) the "is . . . entitled" language, giving the "legal widow" priority over the "deemed widow." This policy is not inconsistent with the fundamental purpose underlying § 416(h)(1)(B) of enabling "deemed widows" to collect Social Security benefits. If it were the only exception to the fundamental purpose of the statute, the statute still would enable a "deemed widow" to apply for and to obtain benefits whenever the "legal widow" became ineligible for them.

The "has been entitled" language, however, if uninterpreted, goes well beyond implementing the policy against double dipping and cannot be reconciled with the fundamental and meaningful purpose of § 416(h)(1)(B) to enable "deemed widows" to collect Social Security benefits. The statute makes clear that the mere fact that the "legal widow" has survived her insured spouse does not automatically preclude the "deemed widow" from obtaining benefits. Rather, the statute permits the "deemed widow" to receive benefits unless and until the "legal widow" makes a formal and successful application for widow's payments:

The entitlement to a monthly benefit . . . based on the wages . . . of [an] insured individual, of a person who would not be deemed to be a . . . widow . . . of such insured individual but for this subpara-

graph, *shall end with the month before the month . . . in which the Secretary certifies . . . that another person is entitled to a benefit under [§ 402(e)] if such other person is . . . [the] widow . . . under subparagraph (A) . . . .*

Section 416(h)(1)(B) (emphasis added). The record in this case and the facts in other cases dealing with § 416(h)(1)(B) suggest strongly that the Secretary—if not the "deemed widow" herself—nearly always learns of the legal impediment to the status of the "deemed widow" as a spouse only when the above statutory requirement is invoked—that is, when a competing "legal widow" applies successfully for a benefit and the Secretary subsequently makes a certification as to her status. In other words, it appears that in most "deemed widow" cases, until the "legal widow" has applied for a benefit, the "deemed widow" has absolutely no need to invoke the "deemed widow" provision, subparagraph (B), because, until such time, she can rely upon the "legal widow" provision, subparagraph (A). Thus, more often than not, subparagraph (B) is unused and without purpose unless and until a "legal widow" applies for and obtains a certification and a benefit.

At the moment of that certification, the "deemed widow" finds herself in a catch-22 paradox under the mechanical reading of the exclusionary clause. As soon as the "legal widow" comes forward and is certified as eligible for a benefit, she proves that the "deemed widow" must invoke § 416(h)(1)(B) if the "deemed widow" is ever to qualify for a benefit. Yet in every instance in which the "legal widow" does become certified, or ever has been certified, to receive a benefit based on her prior marriage to the insured of the "deemed widow" —even where she later becomes ineligible for the benefit, as by her own death—she "is or has been entitled to a benefit," and the "deemed widow," therefore, would be forever barred from invoking § 416(h)(1)(B) and claiming a benefit based on her marriage to the same insured. In short, pre-

cisely when nearly every "deemed widow" has reason to invoke § 416(h)(1)(B), that is, after the "legal widow" has come forward and has been certified, is the time when the exclusionary clause would make her doing so futile—even in cases where double dipping is not an issue. Under a mechanical reading of the exclusionary clause, the statute would confer a benefit upon "deemed widows" only in the unusual case where no "legal widow" has ever been certified to receive a benefit and where the Secretary nonetheless learns of the impediment to the "deemed widow"; in the usual case where the Secretary learns of the impediment *because* the "legal widow" has applied for and has been certified to receive the benefit, § 416(h)(1)(B) would confer no benefit upon anyone, its apparent conferral of a benefit being utterly illusory.

This result cannot be what Congress intended when it enacted § 416(h)(1)(B), especially when examined with the usual interpretive standards by which the courts seek to implement the will of Congress. "It is a familiar maxim of statutory interpretation that courts should enforce a law so as to achieve its overriding purpose, even if the words of the act leave room for a contrary interpretation." *Rosenberg v. Richardson*, 538 F.2d 487, 490 (2d Cir. 1976); *Haberman v. Finch*, 418 F.2d 664, 666 (2d Cir. 1969). "[I]t is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.) (L. Hand, J.), *aff'd*, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945). Finally, because Congress intended the Social Security Act to be an adequate program of social insurance— one in which working people would pay "premiums" and would then be entitled to rely on the program to provide security for themselves and their dependents in their old age—the Act must be "liberally construed and applied." *Rosenberg v. Richardson*, 538 F.2d at 490. On the basis of these standards and the manifest intent of Congress

that § 416(h)(1)(B) have some substantial meaning in conferring a benefit upon "deemed widows," I am compelled to conclude that Congress intended to deny the conferral of the benefit to "deemed widows" qualified in every respect apart from the exclusionary provision, only where the result of doing so would be to allow two or more persons to receive full simultaneous benefits on the basis of a purported marriage to the same insured.

That this construction of the statute more faithfully carries out the will of Congress than the mechanical construction is clear not only from the purpose of § 416(h)(1)(B) but from its express language as well. The language of that provision, quoted three paragraphs above, indicates that unless *and until* a "legal widow" comes forward and applies for a benefit, *and* is certified to receive it, the "deemed widow" may continue to receive the benefit. In view of this language, the Secretary concedes that appellant was entitled to receive payments as a "deemed widow" until the "legal widow" not only has appeared on the scene but also has made a lawful claim on the treasury. The Secretary concedes, therefore, that even if the "legal widow" existed, and the Secretary knew her to exist and knew her to be the "legal widow," the Secretary would hold the "deemed widow" entitled to receive the benefit *until* the "legal widow" has made a successful claim on the treasury. The only adequate legal principle that is capable of explaining this language and the Secretary's view relative to it is the policy against double dipping. There is no adequate principle on the basis of which I can distinguish "deemed widows" receiving a benefit until a qualified "legal widow" gets around to applying successfully for the benefit, from "deemed widows," like appellant, receiving a benefit where the "legal widow" becomes disqualified to receive the benefit. Therefore, both groups of "deemed widows" should be treated alike: both should receive the benefit.

It is uncontestably revealed in the Secretary's stated policy and practice that the Secretary has concluded, as I conclude, that

the "has been entitled" language of § 416(h)(1)(B) cannot, consistent with congressional intent, be read mechanically but must be interpreted. In addition to her other interpretations of the statute, the Secretary construed the statute at oral argument to allow the "deemed widow" to receive the benefit as soon as the "legal widow" dies. Under this view, when the "legal widow" who had once been certified to receive the benefit and had thereby preempted all competitors dies, the "deemed widow" immediately becomes eligible to receive that very benefit. Unfortunately, the Secretary then draws a line, one that I find unjustifiable and unanalytic as a matter of statutory interpretation, that would not allow the "deemed widow" to apply for a benefit where the "legal widow" becomes ineligible for the benefit because of some impediment other than death, such as remarriage. In my view, there are only two principled interpretations of the exclusionary clause—the mechanical reading, which Congress surely did not intend, and the interpretation of this opinion. Any intermediate position is essentially arbitrary. Of course the Secretary might argue that the government's construction is rationally based in that it avoids the administrative costs, in both labor and paper, that the government would incur if every time a gap in, rather than a permanent impairment to, the eligibility of the "legal widow" appeared, the "deemed widow" were permitted to apply and qualify for the benefit. The cost of shuffling a few papers, however, is far too insubstantial a consideration to override the clear intent of Congress in § 416(h)(1)(B) to enable "deemed widows" to receive Social Security benefits.

No one denies that appellant's relationship to the deceased insured was typical of "deemed widows," whom Congress intended § 416(h)(1)(B) to benefit. No one disputes that the "legal widow" in this case for a time received Social Security benefits as a subparagraph (A) widow and that she later became ineligible for the benefit but did not die. No one contends that this case violates the policy against double dipping into the federal treasury. And no limit to the fundamental purpose of Congress to benefit "deemed widows" other than the policy against double dipping is apparent from the statute or the record in this case, nor am I able to conceive of one. Under these circumstances, I can see no reason to deny appellant the Social Security benefit to which her marital arrangement with the insured working person should entitle her.

Admittedly, the noisiest trumpets of our day call us to reduce the burden on the federal fisc. But the notes that signal us to do so by shifting that burden onto the backs of deserving persons, like appellant, are less than clarion. As Judge Kaufman has pointed out:

> Although preservation of the fisc is a laudable goal, public officials must pursue it with discretion, lest deserving individuals be deprived of payments Congress clearly intended them to have. This maxim applies with even greater force when the benefits are not government largesse, but instead have been purchased ... for the claimant [by her spouse].

*Rosenberg v. Richardson*, 538 F.2d at 488. It is inconceivable to me that Congress intended for the government—which in this context is an insurer who has received "premiums" from the insured for the benefit of the insured's spouse—to enrich itself by paying no benefits to the insured's only eligible spouse. Accordingly, I would reverse the Secretary's decision and would order that the Secretary carry out the policy of Congress.