Amalia GARCIA, Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.

No. 84–1768.

United States Court of Appeals, First Circuit.

Submitted Feb. 8, 1985.

Decided April 22, 1985.

Vicente Perez Diaz, San Juan, P.R., on brief for plaintiff, appellant.

John W. Wojciechowski, Office of the General Counsel, Social Security Div., Dept. of Health and Human Services, John M. Sacchetti, Chief, Retirement and Survivors Insurance Litigation Branch, Randolph W. Gaines, Asst. Gen. Counsel for Litigation, Donald A. Gonya, Asst. Gen. Counsel, Baltimore, Md., Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., and Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., on brief for defendant, appellee.

---

Before COFFIN, BREYER and TORRU-ELLA, Circuit Judges.

PER CURIAM.

The question in this case is which of two of the decedent wage earner's five former wives is entitled to mother's benefits under 42 U.S.C. § 402(g). Claimant went through a marriage ceremony with decedent in 1968 and lived with him until his death in 1978. The problem, however, is that there is a record that decedent had earlier (in 1961) married one Elpidia Espinosa, but there is no record that Elpidia and decedent ever divorced. (Records of decedent's divorces from his other three wives were found.) Hence, Elpidia claimed she was the decedent's legal widow, and the Secretary so found.

To qualify for mother's benefits, claimant had to establish, among other things, that she was the "widow" of the deceased. Determination of her status as widow was governed by 42 U.S.C. § 416(h). Potentially there were two ways claimant could qualify: under 42 U.S.C. § 416(h)(1)(A) as the "legal" widow of decedent or under 42 U.S.C. § 416(h)(1)(B) as the "deemed" widow. We address each in turn.

1. Legal Widow.

The first way claimant could have established her status as widow was to show that "the courts of the state in which [decedent] was domiciled at the time of death" would find that claimant and decedent were "validly married" at the time of death. 42 U.S.C. § 416(h)(1)(A). Decedent was domiciled in Puerto Rico at the time of death, and hence Puerto Rico law controlled. The Secretary stated Puerto Rico law to be as follows: "Where there are two or more conflicting marriages the latter marriage is presumed valid absent proof that the prior marriage was contracted and that it did not terminate. The burden of proof rests with the spouse of the prior marriage." Claimant has not challenged this construction of Puerto Rico law, and we therefore accept it. She does dispute, however, the Secretary's finding that Elpidia Espinosa satisfied her burden of proof.

The evidence in support of the Secretary's finding that Elpidia was the legal widow (i.e., that Elpidia was validly married to decedent at the time of his death) was a letter from a civil registry in Mexico attesting to decedent's marriage to Elpidia in Mexico on November 9, 1961, a letter from a Mexican civil registry official stating there was no record Elpidia and decedent had been divorced, and a statement that Puerto Rico records had been searched for evidence of such a divorce and none found. Additionally, the deceased's father stated that decedent had married Elpidia in Mexico, that they had had marital difficulties, that the deceased had left thinking he was divorced from Elpidia because Elpidia had told the deceased she had arranged their divorce, and that as far as the father knew the deceased never divorced Elpidia.

Claimant, too, at one point acknowledged decedent had married Elpidia—in her December 28, 1981 application for benefits she reported Elpidia married decedent in 1961 but that decedent had sworn to her that he and Elpidia were divorced in Mexico—though in an earlier statement (June 1, 1981) claimant said decedent had referred to Elpidia as an extra-marital affair and had never said anything about having gone through a ceremonial marriage with Elpidia.

To begin with, we reject claimant's attack on Elpidia's failure to file an original of her marriage certificate to decedent, the ALJ's failure to accord claimant a second hearing, and the ALJ's failure to subpoena Elpidia (who lives in Mexico). These matters are covered adequately in the Appeals Council opinion. See also 20 C.F.R. § 404.707(b)(1) (certified copies of extracts from records accepted; original documents not always required); 20 C.F.R. § 404.725(b).

Claimant, who did not marry decedent until 1968, argues that it was impossible for decedent to have married Elpidia in Mexico in November 1961 because decedent was studying medicine in Spain at that time and decedent had been deported from Mexico in 1960 and hence would not have been able to reenter Mexico in 1961. In support,

she points principally to two documents. The first is an affidavit decedent executed in 1968 in application for a temporary work permit. The affidavit gave decedent's educational background and stated he had passed certain courses at the University of Madrid from 1960 to 1962. The second is a 1964 letter from the United States Embassy in Mexico to decedent's father which referred to a 1960 deportation for drug addiction and stated decedent was currently being detained by immigration authorities in Mexico because he had returned to Mexico without authorization.

The Secretary reasoned that the fact decedent had studied in Spain in 1961 did not mean he could not have travelled to Mexico and married Elpidia in November of that year. We note that the records from the University of Madrid suggest decedent's course work ended in May 1961. Hence it is entirely possible claimant could have managed to enter Mexico thereafter and marry Elpidia. On this record the matter was one for the Secretary to resolve, and the Secretary's findings are supported by substantial evidence.

Next, claimant argues that even if decedent was in Mexico on November 9, 1961 and purported to go through a marriage ceremony with Elpidia, the purported marriage is completely void and of no effect under either Mexican or Puerto Rico law because, in view of the 1960 deportation, claimant was illegally in Mexico and therefore could not enter into any valid contract. Claimant says this result is mandated by a civil code provision reading, "Whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed." Because decedent's entrance into Mexico was, claimant says, "in contravention of" Mexican law, every contract claimant thereafter purported to execute, including a marriage one, was void. Claimant has directed us to nothing suggesting the code provision would be interpreted in such an embracive manner. Rather, the more logical reading as applied to this case would be that the act in direct contravention of law—the entrance into Mexico—was considered void (in other words it did not legalize claimant's entry), but not acts such as buying groceries at a market or getting married which have little to do with immigration laws.

Hence, we conclude the Secretary's finding that Elpidia is the legal widow is supported by substantial evidence and not infected by legal error.

2. Deemed widow.

The second way in which claimant could have qualified as a widow was under 42 U.S.C. § 416(h)(1)(B). To satisfy § 416(h)(1)(B), a person such as claimant, living with a wage earner at the time of his death, must at a minimum show that she went through a marriage ceremony in good faith and that, but for a legal impediment unknown to her at the time of the ceremony, the marriage would have been valid. The Secretary concluded claimant satisfied this requirement. For simplicity, we will refer to this as the "good faith marriage" requirement.

The central dispute in the case, however, is whether § 416(h)(1)(B) also imposes a second requirement before a deemed widow can qualify for benefits—namely, that a legal widow neither "is [n]or has been entitled to benefits." In other words, if a legal widow has once collected benefits, even though she is not currently receiving any, is a person who has met the good faith marriage requirement barred from benefits? The issue is crucial here because Elpidia did collect mother's benefits for a time before they terminated in August 1980 when Nora, the daughter of Elpidia and decedent, turned 18.

We turn to the statute. Section 416(h)(1)(B) was added to the Social Security Act in 1960. Prior thereto, spousal status was determined solely on the basis of the provision just considered, § 416(h)(1)(A). The first sentence of § 416(h)(1)(B) generally sets forth the good faith marriage requirement under which a marriage can be deemed valid. The second sentence then says,

"The provisions of the preceding sentence shall not apply (i) if another person

*is or has been* entitled to *a benefit* under subsection (b) [wife's insurance benefits], (c) [husband's insurance benefits], (e) [widow's insurance benefits], (f) [widower's insurance benefits], or (g) [mother's and father's insurance benefits] of section 402 of this title on the basis of the wages and self-employment income of such insured individual and such other person is (or is deemed to be) a wife, widow, husband, or widower of such insured individual under subparagraph (A) at the time [the] applicant files the application...." (Emphasis added).

It is the interpretation of the "is or has been entitled to a benefit" clause which is in dispute.

The literal reading of the clause is clear and would seem to say just what the Secretary says it means—namely, that once a legal widow either is or has received some benefit, no matter how little, the deemed widow is disqualified from receiving benefits. This is the interpretation a number of courts have adopted. *Martin v. Harris,* 653 F.2d 428 (6th Cir.1981) (where legal widow received widow's benefits from 5/26/72 until her remarriage in 10/18/72 which terminated her entitlement to widow's benefits, deemed widow applying for widow's benefits in 1973 not entitled to them because of legal widow's prior receipt of benefits), *cert. denied,* 454 U.S. 1165, 102 S.Ct. 1039, 71 L.Ed.2d 321 (1982). See also *White v. Schweiker,* 709 F.2d 247 (3d Cir.1983) (deemed widow may not collect widow's benefits since legal widow is collecting them); *Davis v. Califano,* 603 F.2d 618 (7th Cir.1979) (same). These courts have viewed the "is or has been entitled to a benefit" clause as clear, leaving no room for construction, and have concluded Congress acknowledged the plight of deemed widows but limited to a substantial extent their entitlement to benefits. *See,* e.g., *Martin v. Harris,* 653 F.2d at 433.

Other courts have rejected a literal reading. See *Woodson v. Schweiker,* 656 F.2d 1169 (5th Cir.1981) (while legal widow and deemed widow could not concurrently collect benefits, after the legal widow's moth-

er's benefits terminated on her remarriage, the deemed widow could collect benefits); *Rosenberg v. Richardson,* 538 F.2d 487 (2nd Cir.1976) (benefits of a legal widow already receiving social security benefits on basis of her own salary were increased only $1.40 per month by husband's death; deemed widow and legal widow may concurrently collect benefits, deemed widow's to be in the amount of the difference between the full widow's benefit the deemed widow would have received but for the legal widow's application and the amount by which the legal widow's benefits were increased by virtue of her certification as legal widow); *Capitano v. Secretary of Health and Human Services,* 732 F.2d 1066 (2nd Cir.1984) (reaffirming *Rosenberg* ); *Martin v. Harris,* 653 F.2d 428, 433 (McKay, J. dissenting). The reasoning of the latter cases is that the "is or has been entitled to a benefit" clause, read mechanically, emasculates the statute, renders much of it illusory, and is inequitable. These courts see the purpose of the clause as limited to preventing "double dipping" on the federal treasury. In other words, it prohibits a variety of mates from *concurrently* drawing *full* Social Security benefits on the basis of the decedent's account by according preference to the legal widow, but does not otherwise disqualify the deemed widow from benefits. Thus, for example, when the legal widow's benefits have terminated due, say, to remarriage, the deemed widow, if otherwise eligible, may collect.

The second circuit in allowing a legal widow and a deemed widow concurrently to receive benefits concluded that only if a legal widow had received *full* benefits would a deemed widow automatically be disqualified by the legal widow's receipt of benefits. It thus read the phrase "is or has been entitled to a benefit" to mean "is or has been entitled to a *full* benefit" and relied on legislative history, S.Rep. No. 1856, 86th Cong., 2d Sess., *reprinted in* [1960] U.S.Code Cong. & Adm.News 3608, 3629, 3684–85, to reach this result. *Rosenberg,* 538 F.2d at 491. We find that legisla-

tive history unhelpful. It restates the statute without analysis.

The argument that a literal interpretation of the "is or has been entitled" clause tends to make any benefit § 416(h)(1)(B) purports to confer largely illusory has more appeal, but ultimately we are not convinced by it. The illusion is said to inhere in this. Generally, when a deemed widow applies for benefits, the existence of a legal widow is unknown to the Secretary and often to the applicant herself. In other words, the deemed widow usually does not rely on § 416(h)(1)(B), the section enacted to entitle deemed widows to benefits, but rather relies on § 416(h)(1)(A), the section pertaining to legal widows. Therefore, initially § 416(h)(1)(B) serves little purpose. When, however, a competing legal widow does file and establish a claim and hence § 416(h)(1)(B) could be of avail to the deemed widow, literal application of the "is or has been entitled" phrase disqualifies the deemed widow from receiving any further benefits. Hence under a literal interpretation of the exclusion clause, § 416(h)(1)(B) assists deemed widows "only in the unusual case where no 'legal widow' has ever been certified to receive a benefit [but] ... the Secretary [has] nonetheless learn[ed] of the impediment to the 'deemed widow.'" *Martin v. Harris,* 653 F.2d at 434–435 (McKay, J., dissenting).

We do not know how usual or unusual it is for spouses either to know or to harbor a suspicion or nagging doubt that perhaps there is some legal impediment to their marriage. Nor do we know how many such impediments might come to the Secretary's attention in the absence of an application from a competing spouse. Thus we are not in a position to judge that § 416(h)(1)(B) is necessarily illusory when the "is or has been entitled" clause is given its literal interpretation. Section 416(h)(1)(B) does allow a spouse who did not know of the marriage impediment "at the time of [the] ceremony," but who learns of it later, to apply for benefits as if he or she had been validly married. And benefits may be collected provided the legal spouse neither "is or has been entitled"

to benefits. Furthermore, under the third sentence of § 416(h)(1)(B), the benefits of the deemed spouse do not terminate until "the month before the month" in which the Secretary certifies another as the legal spouse. Thus, though the deemed spouse is in a less favored position than the legal spouse, we are not convinced that the benefits § 416(h)(1)(B) does confer, even when the "is or has been entitled" clause is given its plain and literal meaning, are illusory. Harsh as the result may seem in this and similar cases, we see no basis to depart from a literal and plain reading on the statute or to think that Congress intended any other result.

*Affirmed.*