MATHEWS, SECRETARY OF HEALTH, EDUCATION, AND WELFARE *v.* De CASTRO

No. 75-1197.  Argued November 8, 1976—Decided December 13, 1976

*Assistant Attorney General Lee* argued the cause for appellant.  With him on the briefs were *Solicitor General Bork, Deputy Solicitor General Jones,* and *Leonard Schaitman.*

*Marvin A. Brusman* argued the cause for appellee.  With him on the brief was *Theodore R. Sherwin.*

MR. JUSTICE STEWART delivered the opinion of the Court.

Under the Social Security Act a married woman whose husband retires or becomes disabled is granted benefits if she has a minor or other dependent child in her care.  A divorced

woman whose former husband retires or becomes disabled does not receive such benefits. The issue in the present case is whether this difference in the statutory treatment of married and divorced women is permissible under the Fifth Amendment to the United States Constitution.[1]

I

Section 202 (b)(1) of the Social Security Act, 49 Stat. 623, as added and amended, 42 U. S. C. § 402 (b)(1) (1970 ed. and Supp. V), provides for the payment of "wife's insurance benefits."[2] To qualify under this section a woman must be the

---

[1] It is well settled that the Fifth Amendment's Due Process Clause encompasses equal protection principles. See, e. g., *Weinberger* v. *Salfi*, 422 U. S. 749, 768–770.

[2] Title 42 U. S. C. § 402 (b)(1) (1970 ed. and Supp. V) provides in full:

"(b) Wife's insurance benefits.

"(1) The wife (as defined in section 416 (b) of this title) and every divorced wife (as defined in section 416 (d) of this title) of an individual entitled to old-age or disability insurance benefits, if such wife or such divorced wife—

"(A) has filed application for wife's insurance benefits,

"(B) has attained age 62 or (in the case of a wife) has in her care (individually or jointly with such individual) at the time of filing such application a child entitled to a child's insurance benefit on the basis of the wages and self-employment income of such individual,

"(C) in the case of a divorced wife, is not married, and

"(D) is not entitled to old-age or disability insurance benefits, or is entitled to old-age or disability insurance benefits based on a primary insurance amount which is less than one-half of the primary insurance amount of such individual,

"shall (subject to subsection (s) of this section) be entitled to a wife's insurance benefit for each month, beginning with the first month in which she becomes so entitled to such insurance benefits and ending with the month preceding the first month in which any of the following occurs—

"(E) she dies,

"(F) such individual dies,

"(G) in the case of a wife, they are divorced and either (i) she has not attained age 62, or (ii) she has attained age 62 but has not been

wife or "divorced wife"[3] of an individual entitled to old-age or disability benefits. Then, assuming that she meets the other statutory requirements, the woman is eligible to receive a monthly payment if she "has attained age 62 or (*in the case of a wife*) has in her care (individually or jointly with [her husband]) a child entitled to a child's insurance benefit . . . ." 42 U. S. C. § 402 (b)(1)(B) (emphasis supplied). As the italicized phrase indicates, a woman under 62 who has in her care an entitled child[4] must currently be married to the wage earner in order to be eligible to receive benefits. A divorced woman receives monthly payments if she is 62 or over and her ex-husband retires or becomes disabled, but if she is under 62, she receives no benefits even if she has a young or disabled child in her care.[5]

---

married to such individual for a period of 20 years immediately before the date the divorce became effective,

"(H) in the case of a divorced wife, she marries a person other than such individual,

"(I) in the case of a wife who has not attained age 62, no child of such individual is entitled to a child's insurance benefit,

"(J) she becomes entitled to an old-age or disability insurance benefit based on a primary insurance amount which is equal to or exceeds one-half of the primary insurance amount of such individual, or

"(K) such individual is not entitled to disability insurance benefits and is not entitled to old-age insurance benefits."

[3] The Act defines "divorced wife" as "a woman divorced from an individual, but only if she had been married to such individual for a period of 20 years immediately before the date the divorce became effective." 42 U. S. C. § 416 (d)(1). The term "divorce" refers to a divorce *a vinculo matrimonii.* § 416 (d)(4).

[4] The conditions upon which a child is entitled to receive "child's insurance benefits" are set out in § 202 (d) of the Act, 42 U. S. C. § 402 (d) (1970 ed. and Supp. V). Generally, the child must be dependent on the wage earner and either under 18 years old (or a full-time student under 22 years old) or under a disability.

[5] The Act also provides for the payment of "widow's insurance benefits" and "mother's insurance benefits." 42 U. S. C. §§ 402 (e), (g) (1970 ed. and Supp. V). Divorced and married women, with or without dependent

The appellee, Helen De Castro, was divorced from her husband in 1968, after more than 20 years of marriage. She cares for a disabled child who is eligible for and receives child's insurance benefits under the Act. In May 1971 her former husband applied for and later was granted old-age insurance benefits. Mrs. De Castro applied for wife's insurance benefits shortly thereafter. At the time of her application she was 56 years old. Her application was denied by the Secretary of Health, Education, and Welfare because no wife's benefits are payable to a divorced wife under 62 years of age.

Mrs. De Castro then filed suit in the United States District Court for the Northern District of Illinois, seeking judicial review of the Secretary's decision. Her complaint alleged that § 202 (b)(1)(B) of the Social Security Act "operates to arbitrarily discriminate against divorced wives," and prayed for an order directing the Secretary to pay benefits to her, a declaration that § 202 (b)(1)(B) is unconstitutional, and an injunction against that section's application.

A three-judge court was convened pursuant to 28 U. S. C. §§ 2281, 2282. The court considered the parties' cross-motions for summary judgment and granted the relief prayed for in the complaint, holding that the wife's benefits provision "invidiously discriminates against divorced wives . . . in violation of the Fifth Amendment." *De Castro* v. *Weinberger,* 403 F. Supp. 23, 30. Central to the court's ruling was its determination that "there is no rational basis for concluding that a married wife having a dependent child in her care has a greater economic need than a divorced wife caring for such a child." *Id.,* at 28. The Secretary appealed directly to this Court under 28 U. S. C. § 1252, and we noted probable jurisdiction, 425 U. S. 957.

children, are eligible to receive monthly payments under these sections in certain circumstances not pertinent here.

## II

The basic principle that must govern an assessment of any constitutional challenge to a law providing for governmental payments of monetary benefits is well established. Governmental decisions to spend money to improve the general public welfare in one way and not another are "not confided to the courts. The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment." *Helvering* v. *Davis,* 301 U. S. 619, 640. In enacting legislation of this kind a government does not deny equal protection "merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge* v. *Williams,* 397 U. S. 471, 485.

To be sure, the standard by which legislation such as this must be judged "is not a toothless one," *Mathews* v. *Lucas,* 427 U. S. 495, 510. But the challenged statute is entitled to a strong presumption of constitutionality. "So long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket." *Jefferson* v. *Hackney,* 406 U. S. 535, 546. It is with this principle in mind that we consider the specific constitutional issue presented by this litigation.

The old-age and disability insurance aspects of the Social Security system do not purport to be general public assistance laws that simply pay money to those who need it most. That was not the predominant purpose of these benefit provisions when they were enacted or when they were amended. Rather, the primary objective was to provide workers and

their families with basic protection against hardships created by the loss of earnings due to illness or old age.[6]

The wife's insurance benefit at issue here is consistent with this overriding legislative aim: It enables a married woman already burdened with dependent children to meet the *additional need* created when her husband reaches old age or becomes disabled. Accordingly, the District Court's observation that many divorced women receive inadequate

---

[6] The old-age and disability insurance programs are distinct from the provisions for public assistance to the aged and disabled also contained in the Social Security Act. 42 U. S. C. §§ 301–306, 1351–1355, partially repealed by Pub. L. No. 92–603, §§ 303 (a), (b), 86 Stat. 1484; 42 U. S. C. §§ 1381–1383c (1970 ed., Supp. V). The insurance programs are contributory in nature and are designed to prevent public dependency by protecting workers and their families against common economic hazards. Congress in 1935 contemplated that the old-age insurance benefits would be "payable wholly regardless of the need of the recipient." H. R. Rep. No. 615, 74th Cong., 1st Sess., 1 (1935). The public-assistance-for-the-aged program, on the other hand, was designed "to provide for old people who are dependent upon the public for support . . . ," *id.,* at 4, and the statute specifically referred to "aged needy individuals." Social Security Act, § 1, 49 Stat. 620. See also H. R. Rep. No. 615, *supra,* at 3–6; S. Rep. No. 628, 74th Cong., 1st Sess., 4–7 (1935); Message of the President Recommending Legislation on Economic Security, H. R. Doc. No. 81, 74th Cong., 1st Sess., 20–28 (1935).

In 1950 the Act was amended to provide for grants-in-aid to the States so that assistance could be furnished "to needy individuals eighteen years of age or older who are permanently and totally disabled." Social Security Act Amendments of 1950, § 351, 64 Stat. 555. In 1956 Congress created a program for disability insurance benefits. Social Security Amendments of 1956, § 103 (a), 70 Stat. 815. Again, the insurance program, unlike the public assistance provisions, was not need based, but instead was designed to protect against the specific economic hardships created by involuntary, premature retirement. See H. R. Rep. No. 1300, 81st Cong., 1st Sess., 27–28, 53–54 (1949); Recommendations for Social Security Legislation, Reports of the Advisory Council on Social Security, S. Doc. No. 208, 80th Cong., 2d Sess., 69–70, 95–97 (1949); S. Rep. No. 2133, 84th Cong., 2d Sess., 3–4 (1956); H. R. Rep. No. 1189, 84th Cong., 1st Sess., 3–6 (1955).

child-support payments, while undoubtedly true, is hardly in point. The same can be said of the District Court's statement that "there is no rational basis for concluding that a married wife having a dependent child in her care has a greater economic need than a divorced wife caring for such a child." For whatever relevance these observations might have in a case involving a constitutional attack on a statute that gave monetary benefits to women based on their general overall need, that is not this case.

Section 202 (b)(1)(B) of the Act addresses the particular consequences for his family of a wage earner's old age or disability. Congress could rationally have decided that the resultant loss of family income, the extra expense that often attends illness and old age, and the consequent disruption in the family's economic well-being that may occur when the husband stops working justify monthly payments to a wife who together with her husband must still care for a dependent child.

Indeed, Congress took note of exactly these kinds of factors when it amended the Social Security Act in 1958. Between 1950 and 1958 wives under retirement age with dependent children received benefits only when their husbands became entitled to old-age insurance payments. Social Security Act Amendments of 1950, § 101 (a), 64 Stat. 482. Congress then amended the Act to provide the same benefits when the wage earner becomes disabled.[7] Social Security

---

[7] "Wife's insurance benefits" first became part of the Social Security Act in 1939. Amendments enacted that year provided for monthly payments to wives 65 years or older whose husbands were entitled to old-age benefits. Social Security Act Amendments of 1939, § 201, 53 Stat. 1362. In 1950 Congress dropped the age requirement for women with retired husbands and entitled children in their care. Social Security Act Amendments of 1950, § 101 (a), 64 Stat. 482. In 1958 Congress extended similar benefits to wives of any age who had entitled children and disabled husbands. Social Security Amendments of 1958, § 205 (b)(1), 72 Stat. 1021. While the legislative history of the 1950 amendments is sparse, the congressional

Amendments of 1958, § 205 (b)(1), 72 Stat. 1021. Both the House and Senate Committee reports accompanying the proposed legislation explained that the purpose of the monthly payments was to give "recognition to the problems confronting families whose breadwinners" stop work. The focus was specifically on "adequate protection for [the husband's] family," and the reports mentioned the high medical expenses often associated with disability and the possibility that the wife might have to forgo work in order to care for her disabled husband. H. R. Rep. No. 2288, 85th Cong., 2d Sess., 12–13 (1958); S. Rep. No. 2388, 85th Cong., 2d Sess., 10–11 (1958).

In view of the legislative purpose, it is hardly surprising that the congressional judgment evidently was a different one with respect to divorced women. Divorce by its nature works a drastic change in the economic and personal relationship between a husband and wife. Ordinarily it means that they will go their separate ways. Congress could have rationally assumed that divorced husbands and wives depend less on each other for financial and other support than do couples who stay married. The problems that a divorced wife may encounter when her former husband becomes old or disabled may well differ in kind and degree from those that a woman married to a retired or disabled husband must face. For instance, a divorced wife need not forgo work in order to stay at home to care for her disabled husband. She may not feel the pinch of the extra expenses accompanying her former husband's old age or dis-

---

purpose presumably was to recognize a family need created when the husband reaches old age and stops working. Certainly the sole purpose could not have been to allow the wife to remain at home to take care of the child, as the appellee suggests, because the presence of the retired husband at home ordinarily would ensure parental supervision. Similarly, when Congress provided benefits in 1958 to wives with disabled husbands, it had purposes beyond the mere encouragement of the wife to stay home and take care of the children. See H. R. Rep. No. 2288, 85th Cong., 2d Sess., 12–13 (1958); S. Rep. No. 2388, 85th Cong., 2d Sess., 10–11 (1958).

ability. In short, divorced couples typically live separate lives. It was not irrational for Congress to recognize this basic fact in deciding to defer monthly payments to divorced wives of retired or disabled wage earners until they reach the age of 62.

This is not to say that a husband's old age or disability may never affect his divorced wife. Many women receive alimony or child support after divorce that their former husbands might not be able to pay when they stop work. But even for this group—which does not include the appellee in the present case—Congress was not constitutionally obligated to use the Social Security Act to subsidize support payments. It could rationally decide that the problems created for divorced women remained less pressing than those faced by women who continue to live with their husbands.

In any event, the constitutional question "is not whether a statutory provision precisely filters out those, and only those, who are in the factual position which generated the congressional concern reflected in the statute." *Weinberger* v. *Salfi*, 422 U. S. 749, 777. We conclude, accordingly, that the statutory classifications involved in this case are not of such an order as to infringe upon the Due Process Clause of the Fifth Amendment.

The judgment is reversed.

*It is so ordered.*

Mr. Justice Marshall concurs in the judgment.