Leslie B. YOST and Bertha Linderholm, Plaintiffs,

v.

Richard SCHWEIKER, as Secretary of the Department of Health and Human Services, and United States Railroad Retirement Board, an Agency of the United States of America, Defendants.

Civ. No. 81–4048.

United States District Court, D. South Dakota, S. D.

May 13, 1982.

Gill Deford, National Senior Citizens Law Center, Los Angeles, Cal., Jane Nord, Western Minnesota Legal Services, Willmar, Minn., Eileen Sweeney and Toby Edelman, National Senior Citizens Law Center, Washington, D. C., Joseph Rimlinger, East River Legal Services, Sioux Falls, S. D., for plaintiffs.

Philip N. Hogen, U. S. Atty., Sioux Falls, S. D., Leland Ware, Thomas S. Martin, Dept. of Justice, Catherine A. Ribnick, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

JOHN B. JONES, District Judge.

Plaintiff Leslie Yost, a 78-year-old woman, has brought this action on behalf of herself and those individuals who are similarly situated challenging the constitutionality of 42 U.S.C. § 402(*l*). Plaintiff has moved for a summary judgment. Defendants have moved for a dismissal.

Plaintiff was married to the now-deceased Herbert Yost for 42 years. Herbert Yost was fully insured under both the Social Security Act and the Railroad Retirement Act. They were divorced in 1966. Herbert Yost remarried in the fall of 1972. Leslie Yost has not remarried.

As a divorced spouse, Leslie Yost was eligible for and received divorced-spouse benefits under the Social Security Act. Upon Herbert's death in 1976, Leslie continued to receive benefits from the Social Security Act as a surviving divorced spouse. These benefits continued for approximately two years.

On August 17, 1978, plaintiff was informed that she had been erroneously paid surviving divorced spouse benefits under the Social Security Act. Initially, plaintiff was asked to repay the erroneously paid amount of $3,486.70. This request was later withdrawn as creating too great of a hardship upon the plaintiff.

Plaintiff was thereinafter denied benefits under both the Railroad Retirement Act and the Social Security Act. This denial was based upon 42 U.S.C. 402(*l*), which provides as follows:

If any person would be entitled, upon filing application therefor to an annuity under section 231a of Title 45 [the Railroad Retirement Act] or to a lump-sum payment under section 231e(b) of Title 45, with respect to the death of an employee (as defined in section 231 of Title 45) no lump-sum death payment, and no monthly benefit for the month in which such employee died or for any month thereafter, shall be paid under this section to any person on the basis of the wages and self-employment income of such employee.

Plaintiff does not challenge the plain and explicit meaning of 402(*l*) nor does she challenge its mechanical application to herself. She does, however, challenge the basic underlying constitutionality of 402(*l*).

Plaintiff's argument can be reduced to the claim that 402(*l*) results in a denial of Social Security survivor's benefits to otherwise entitled surviving divorced spouses of

individuals who were fully insured under both the Social Security Act and the Railroad Retirement Act, which is arbitrary and irrational, serves no legitimate purposes and is therefore in violation of the equal protection component of the due process clause of the United States.[1]

In making these arguments, plaintiff in effect concedes that 402(1) was valid when it was enacted, for at that time neither the Social Security Act nor the Railroad Retirement Act granted benefits to surviving divorced spouses. Her argument, therefore, is that by expanding the Social Security Act in 1965 to include a surviving divorced spouse a concomitant change to the Railroad Retirement Act was required to prevent a constitutional equal protection violation from occurring. There is nothing, however, that mandates such action. As stated in *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955), "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind."

Although the briefs are extensive and the arguments are ingenious, the Court views one case as setting the controlling precedent for the issues presented.

*U. S. Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980) dealt with a very similar situation. *Fritz* was concerned with the Railroad Retirement Act of 1974 which fundamentally restructured the railroad retirement system. The challenged provisions of the 1974 Act were directed at certain windfall benefits that some retirees were receiving under both the Social Security Act and the Railroad Retirement Act of 1973. The 1974 Act preserved these windfalls for retirees who had retired and were currently receiving the windfalls. The 1974 Act also preserved windfall benefits for employees who had qualified for dual benefits, but had not yet retired, if they had (1) performed some railroad service in 1974, or (2) had a "current connection" with the railroad industry as of December 31, 1974, or (3) completed 25 years of railroad service as of December 31, 1974. Finally, the 1974 Act provided that employees who had qualified for railroad benefits as of the changeover date, but lacked a "current connection" with the railroad industry in 1974 and 25 years of service in the railroad industry, could get a smaller windfall benefit if they had qualified for social security benefits as of the year, prior to 1975, that they left railroad employment.

Fritz and others filed a class action alleging that it was violative of the equal protection component of due process under the Fifth Amendment to distinguish between employees who had more than 10 years but less than 25 years of railroad employment simply on the basis of whether they had a "current connection" with the railroad industry as of the changeover date or as of the date of retirement.

As stated in *Fritz*, 449 U.S. at 174, 101 S.Ct. at 458:

The initial issue presented by this case is the appropriate standard of judicial review to be applied when social and economic legislation enacted by Congress is challenged as being violative of the Fifth Amendment to the United States Constitution. There is no claim here that Congress has taken property in violation of the Fifth Amendment, since railroad benefits, like social security benefits, are not contractual and may be altered or even eliminated at any time. *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 575 [99 S.Ct. 802, 805, 59 L.Ed.2d 1] (1979); *Flemming v. Nestor*, 363 U.S. 603, 608–611 [80 S.Ct. 1367, 1371–1372, 4 L.Ed.2d 1435] (1960). And because the distinctions drawn in § 231b(h) do not burden fundamental constitutional rights or create "suspect" classifications, such as race or national origin, we may put cases involving judicial review of such claims to one side.

---

**1.** "Although 'the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is "so unjustifiable as to be violative of due process." ' *Schneider v. Rusk*, 377 U.S. 163, 168, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218 (1964)." *U. S. Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 173 n. 8, 101 S.Ct. 453, 458 n. 8, 66 L.Ed.2d 368 (1980).

*San Antonio Independent School District v. Rodriguez*, 411 U.S. 1 [93 S.Ct. 1278, 36 L.Ed.2d 16] (1973); *Vance v. Bradley*, 440 U.S. 93 [99 S.Ct. 939, 59 L.Ed.2d 171] (1979).

*Fritz* then goes on to state the standard to be applied in reviewing equal protection challenges to cases involving social and economic benefits.

In the area of economics and social welfare a State [and correspondingly under the Fifth Amendment the Federal Government] does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369]. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' *Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 68–70 [33 S.Ct. 441, 443, 57 L.Ed. 730] ....

... '[The rational-basis standard] is true to the principle that the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy.'

*Fritz*, 449 U.S. at 175, 101 S.Ct. at 459, quoting from *Dandridge v. Williams*, 397 U.S. 471, 485–486, 90 S.Ct. 1153, 1161–1162, 25 L.Ed.2d 491 (1970). *See Schweiker v. Wilson*, 450 U.S. 221, 234, 101 S.Ct. 1074, 1082, 67 L.Ed.2d 186 (1981).

■ Applying the rational-basis standard to this case requires that the defendants prevail.

Plaintiff argues that there is no difference between those persons who are within the purview of 42 U.S.C. 402(*l*) and those who are not. She claims that these are identically situated classes of individuals and therefore, they should be treated identically. This is in my view incorrect. The classes are not identical, for one class consists of individuals who are survivors of a person who was fully insured under both the Railroad Retirement Act *and* the Social Security Act, while the other class consists of survivors of individuals who are insured by only one of the two Acts.

The Court does not, however, feel that its inquiry can stop with the mere finding that the classes are not identical. They probably never are in cases such as this.

The Court must still determine if the actual classification passes constitutional muster. The Court must determine whether there is a reasonable basis for the classification; that is, whether the "legislation classif[ies] the persons it affects in a manner rationally related to legitimate governmental objectives." *Schweiker v. Wilson*, *supra*, 450 U.S. at 230, 101 S.Ct. at 1080.

Here, as in *Fritz*, there is a legitimate governmental objective to which the classification is rationally related. Congress could have determined that 42 U.S.C. § 402(*l*) establishes an efficient mechanism to effectuate the goal that Congress intended to limit survivors of individuals who were insured under both Acts to the benefits available under the Railroad Retirement Act.[2] This mechanism achieves the

2. The legislative history reveals as follows:

Subsection (1) of section 202 [402(*l*)] is a new subsection which provides that if any person could become entitled to an annuity under section 5 of the Railroad Retirement Act of 1937, or a lump-sum payment under subsection (f)(1) of that section, with respect to the death of an employee, no lump-sum death payment or monthly survivors benefits shall be payable under the Social Security Act on the basis of the wages or self-employment income of that employee. This amend-

ment is necessary to continue the existing coordination of survivors benefits under the railroad retirement and old-age and survivors insurance programs. As survivors benefits are based on a combination of the wage records under the programs, it is necessary to specify that eligibility for survivors benefits under one program will preclude the payment of survivors benefits under the other program. Section 205(*o*) of the Social Security Act, as amended by the bill, contains the corresponding provisions for counting rail-

stated purpose of coordinating both Acts.[3] Moreover, it allowed for preservation of the fiscal integrity of both systems.

"General rules are essential if a fund of this magnitude is to be administered with a modicum of efficiency, even though such rules inevitably produce seemingly arbitrary consequences in some individual cases." *Califano v. Jobst*, 434 U.S. 47, 53, 98 S.Ct. 95, 99, 54 L.Ed.2d 228 (1977). Furthermore, awarding benefits of this type "inevitably involves the kind of line-drawing that will leave some comparably needy person outside the favored circle." *Schweiker v. Wilson, supra*, 450 U.S. at 238, 101 S.Ct. at 1084. (omitting footnote).

■ Plaintiff simply has not rebutted the strong presumption of constitutionality that is accorded legislation conferring monetary benefits. *Schweiker v. Wilson, supra*; and *Mathews v. De Castro*, 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976).

Although the Court is sympathetic to the plaintiff's cause, it feels that its hands are bound by the dictates of *U. S. Railroad Retirement Bd. v. Fritz, supra*, which concluded by stating:

> Where, as here, there are plausible reasons for Congress' action, our inquiry is at an end. It is, of course, "constitutionally irrelevant whether this reasoning in fact underlay the legislative decision," *Flemming v. Nestor*, 363 U.S., at 612 [80 S.Ct. at 1373], because this Court has never insisted that a legislative body articulate its reasons for enacting a statute. This is particularly true where the legislature must necessarily engage in a process of line-drawing. The "task of classifying persons for ... benefits ... inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line," *Mathews v. Diaz*, 426

U.S. 67, 83–84 [96 S.Ct. 1883, 1893–1894, 48 L.Ed.2d 478] (1976), and the fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration.[4]

*Fritz*, 449 U.S. at 179, 101 S.Ct. at 461. (footnote added).

The Court, therefore, will grant the defendants' motion to dismiss for failure to state a claim on which relief can be granted, in every aspect. Conversely, the plaintiff's motion for summary judgment is denied.

An order shall be entered accordingly. This memorandum opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52.

---

road compensation in computing survivors benefits under the Social Security Act.

The provisions of this new subsection are the same as the provisions of this matter in the bill as passed by the House.

U.S.Code Cong. Service, §§ 3358–3359 [1950].

**3.** See footnote 2, *infra*.

**4.** Here Congress has obviously responded to such consideration for in the fall of 1981 the Railroad Retirement Act was amended to provide benefits for surviving divorced spouses, such as the plaintiff. See 45 U.S.C. § 231a(c)(2) and (4).