Jill S. Steinberg, plaintiff pro se.

Raymond J. Dearie, U.S. Atty., E.D.N.Y. by Anne E. Stanley, Asst. U.S. Atty., Brooklyn, N.Y., for defendants.

ALTIMARI, District Judge:

This is an action brought by plaintiff Jill S. Steinberg, *pro se,* acting through her father, Maurice Steinberg, which asks this court to determine the validity of the United States Department of Agriculture's decision to discontinue Ms. Steinberg's monthly allotment of food stamps, as well as to order that plaintiff receive her back benefits, retroactive to September, 1982. In essence, Ms. Steinberg challenges the constitutionality of the 1981 amendment of the definition of "household" under the Food Stamp Act, 7 U.S.C. § 2012(i), and the regulations promulgated thereunder. 7 C.F.R. § 273.1(a)(3)(i) (1984). Defendants have

**Jill S. STEINBERG, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE and the Food & Nutrition Service (Family Nutrition Programs), Defendants.**

**No. CV–83–5111.**

United States District Court,
E.D. New York.

Nov. 26, 1984.

moved for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure or, in the alternative, for dismissal of the complaint for failure to state a cause of action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Since various documents outside of the pleadings have been submitted in connection with this motion, the court must treat it as one for summary judgment. *See* Fed.R.Civ.P. 12(b).

## BACKGROUND

Plaintiff Jill Steinberg was born on February 16, 1950 and has been disabled since birth. Ms. Steinberg receives public assistance from the Medicaid program of the Nassau County Department of Social Services, as well as Supplemental Security Income benefits. (Complaint, 1) She resides with her parents at their home in Carle Place. Plaintiff's authorization for food stamp benefits was discontinued by the Nassau County Department of Social Services as of the end of September, 1982. Plaintiff appealed this decision to the State of New York Department of Social Services and, thereafter, on November 5, 1982, a Fair Hearing was held on plaintiff's claim. The Fair Hearing decision, dated November 17, 1982, upheld the discontinuance of benefits, based upon the amended definition of household in the Food Stamp Act. Apparently, plaintiff thereafter filed a petition pursuant to Article 78 of New York's Civil Practice Laws and Rules challenging this determination. However, the outcome of this proceeding remains a mystery to the court, since neither party supplied the court with information in that regard. In any event, it is clear, from plaintiff's complaint and from oral argument held in open court, that the plaintiff basically seeks a determination as to the validity of the amendment of the Food Stamp Act. Since there are no genuine issues of material fact in dispute, this issue is properly before the court on this motion for summary judgment. *See* Fed.R.Civ.P. 56.

## THE STATUTE AND REGULATIONS

Section 2012(i) provides, in pertinent part:

"Household" means (1) an individual who lives alone or who, while living with others, customarily purchases food and prepares meals for home consumption separate and apart from the others, or (2) a group of individuals who live together and customarily purchase food and prepare meals together for home consumption even if they do not do so, unless one of the parents, or siblings, is an elderly or disabled member.

7 U.S.C. § 2012(i).

The regulations issued pursuant to this statute provide, in part:

(3) In no event shall nonhousehold member status ... or separate household status be granted to:

(i) Parents living with their natural, adopted, or step children or such children living with such parents, unless at least one parent is elderly or disabled as defined in § 271.2;

(ii) Children under 18 years of age under the parental control of an adult member of the household; or

(iii) A spouse of a member of the household (as defined in § 271.2).

(iv) Siblings (natural, adopted, half or step brothers and sisters), unless at least one sibling is elderly or disabled as defined in § 271.2.

7 C.F.R. § 273.1(a)(3) (1984). An "elderly or disabled" person, as defined by the regulation, means a household member who is 60 years of age or older, receives supplemental security income, disability, or blindness benefits under the Social Security Act, or meets certain designated veteran-related disability criteria. 7 C.F.R. § 271.2 (1984).

It is clear that at the time of the discontinuance of Ms. Steinberg's food stamp benefits, she was living with her parents, both of whom were under 60 years of age and not disabled. Subsequent to the decision which resulted in the discontinuance of benefits, Mr. Steinberg, Jill's father, did in fact become 60 years of age. Therefore, the amended definition of household no

longer acts as a bar to plaintiff's receipt of benefits. It is the government's position that this being so, the instant action is rendered moot and plaintiff lacks standing to maintain her claim. The court is not wholly convinced of the merit of this argument, since plaintiff seeks damages for benefits allegedly wrongfully withheld. Since there is a possible claim for at least nominal damages, it is appropriate to look beyond defendants' mootness argument, and to view the viability of plaintiff's claim on substantive grounds. *See* 13A C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 3533.3 (1984).

## THE CONSTITUTIONALITY OF THE CURRENT DEFINITION OF HOUSEHOLD UNDER THE FOOD STAMP ACT

Plaintiff challenges the constitutionality of the amended definition of household under the Food Stamp Act, alleging that the enforcement of the definition "is discriminatory in that it deprives her of equal rights and protection of law because she is disabled since birth and by nature of her disability resides in the home of her parents." (Complaint, par. 1).

■ It is well-settled that legislation conferring monetary benefits is entitled to a strong presumption of constitutionality. *See Schweiker v. Wilson*, 450 U.S. 221, 238, 101 S.Ct. 1074, 1085, 67 L.Ed.2d 186 (1981); *Mathews v. DeCastro*, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976); *Price v. Heckler*, 733 F.2d 699, 701 (9th Cir.1984).

In *Schweiker v. Wilson, supra,* the Supreme Court recently reiterated the standard to be applied in assessing the constitutionality of such legislation:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause [and correspondingly the Federal Government does not violate the equal protection component of the Fifth Amendment] merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequity.' *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369]." *Dandridge v. Williams*, 397 U.S. [471], at 485, 90 S.Ct. [1153], at 1161 [25 L.Ed.2d 491].

The Court also has said: "This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary." *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 1314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976). See also *United States Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980). As long as the classificatory scheme chosen by Congress rationally advances a reasonable and identifiable governmental objective, we must disregard the existence of other methods of allocation that we, as individuals, perhaps would have preferred.

450 U.S. at 235, 101 S.Ct. at 1082–83; *see Weinberger v. Salfi*, 422 U.S. 749, 768, 95 S.Ct. 2457, 2468, 45 L.Ed.2d 522 (1975); *Cospito v. Heckler*, 742 F.2d 72, 83 (3d Cir.1984).

It is clear that the legislation involved in the present action satisfies this standard of review. The food stamp program was established in 1964 to address the problem of hunger and malnutrition among the needy of this country. Congress declared that "[t]o alleviate such hunger and malnutrition, a food stamp program is herein authorized which will permit low-income households to purchase a nutritionally adequate diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation." 7 U.S.C. § 2011.

The legislative history of the recent amendment of the definition of household reveals that the intent of Congress was to

"prevent artificially splitting households by requiring non-elderly parents and their children to apply as one food stamp household...." S.Rep. No. 97–139, 97th Cong., 1st Sess. 34 (1981), *reprinted in* 1981 U.S. Code Cong. & Ad.News 396, 424. Congress sought to reduce the number of fraudulent claims for food stamp benefits and thereby reduce program costs. The Congressional Budget Office estimated that the family household requirement, as well as another provision not involved herein, would reduce program costs by $59 million in fiscal year 1982, and as much as $71 million by fiscal year 1984. *Id.* at 53, 1981 U.S.Code Cong. & Admin.News at 443.

The Senate Report states:

The [household definition] provision would require that parents and children who are living together would always be defined as a single household unit, regardless of whether they purchase food and prepare meals together. An exemption from this requirement is provided for households where at least one parent is 60 years of age or older, in which case the parent(s) could apply as a separate household. Under present law, family units may apply as separate households and receive larger benefits if they claim to purchase food and prepare meals separately, even though the children are totally supported by the parents.

\* \* \* \* \* \*

These provisions would not disqualify legitimately poor households that apply as single household units, they would merely require that these households apply as single households rather than splintering for the purpose of receiving higher benefits.

*Id.* at 52–53, 1981 U.S.Code Cong. & Admin.News at 442–43; *see also* S.Rep. No. 97–504, 97th Cong., 2d Sess. 24 (1982), *reprinted in* 1982 U.S.Code Cong. & Ad. News 1641, 1662, 1664.

■ Surely, this court cannot question seriously the wisdom of Congress' policy determination that family members living under the same roof who choose, for what-

ever reason, not to share meals should not receive the same benefits as those otherwise similarly situated family members who modify their meal preparation patterns and share their meals. It is clear that the amended definition of household "rationally advances a reasonable and identifiable governmental objective," *see Schweiker v. Wilson, supra,* 450 U.S. at 235, 101 S.Ct. at 1082, *i.e.,* the elimination of recipient fraud and the allocation of finite benefits. *See Levesque v. Block,* No. C82–437–L, slip. op. at 7–8 (D.N.H. Jan. 26, 1983) (Loughlin D.J.) (amended statute defining household is constitutional); *cf. Termini v. Califano,* 611 F.2d 367, 370 (2d Cir.1979). Further, although plaintiff contends that the amended statute operates to discriminate against her *because* she is disabled, the statute makes no such classification regarding disability, and there is no evidence of congressional intent to so classify applicants.

In *Schweiker v. Wilson, supra,* the issue before the Supreme Court was the constitutionality of the exclusion from Supplemental Security Income benefits under the Social Security Act of otherwise eligible individuals between the ages of 21 through 64 who are institutionalized in public mental institutions that do not receive Medicaid funds for their care. *See* 450 U.S. at 223, 101 S.Ct. at 1077. The court rejected plaintiffs' claim that the statute improperly classified individuals on the basis of mental illness, thus triggering heightened judicial scrutiny. The court noted that

[plaintiffs] have failed to produce any evidence that the intent of Congress was to classify on the basis of mental health ... As in *Jefferson v. Hackney,* 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972), the indirect deprivation worked by this legislation upon [plaintiffs'] class, whether or not the class is considered 'suspect,' does not without more move us to regard it with a heightened scrutiny.

450 U.S. at 234–35, 101 S.Ct. at 1082 (citation omitted). Similarly, in the present action, plaintiff has failed to present to this court any evidence of Congressional intent to classify eligible households on the basis

**436**

of whether or not a non-parent family member is disabled. Therefore, a heightened standard of review is not applicable.

CONCLUSION

It is indeed unfortunate that the lines drawn by Congress in amending the definition of household resulted in the discontinuance of benefits to a person such as Ms. Steinberg, to whom no fraudulent intent could be imputed and who resides with her parents as a consequence of her disability. However, it is not within the province of this court to substitute its judgment for that of Congress.

The court concludes that the 1981 amendment of the definition of "household" under the Food Stamp Act, 7 U.S.C. § 2012(i), and the regulations promulgated thereunder, 7 C.F.R. § 273.1(a)(3)(i) (1984) clearly have a rational basis, serve a legitimate government purpose and hence satisfy the constitutional requirements of due process and equal protection. Accordingly, defendants' motion for summary judgment is hereby granted.

The clerk is directed to enter judgment in favor of all defendants.

SO ORDERED.