**Gertrude THOMAS, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of the Department of Health and Human Services, Defendant.**

No. 87 Civ. 1053 (LBS).

United States District Court, S.D. New York.

May 25, 1989.

Marshall Green, The Legal Aid Society, Bronx, N.Y. (Ian F. Feldman, of counsel), for plaintiff.

Benito Romano, U.S. Atty., S.D.N.Y., New York City (Kathleen A. Zebrowski, Sp. Asst. U.S. Atty., of counsel), for defendant.

OPINION

SAND, District Judge.

Gertrude Thomas, who seeks in this action restoration of her Social Security widow's benefit, had every reason to believe she was legally married to Joseph Thomas, the man she had lived with for forty-seven years and who was the father of her ten children. For the last seven years of his life, she received a monthly Social Security wife's benefit; after he died in 1985, she received a monthly widow's benefit.[1] However, two months after Joseph died, another woman, Janie Thomas, filed a claim for the benefit alleging that she and Joseph, though separated for fifty-two years, had never received a divorce. Upon verifying that Joseph never divorced Janie and never had a marriage ceremony with Gertrude, the Social Security Administration cut off Gertrude's widow's benefit.

Gertrude now challenges that portion of the Social Security Act that denied her a widow's benefit. She claims that she is denied equal protection of the law by the statutory provision that awards benefits to women who had invalid ceremonial marriages but denies them to women who had invalid common law marriages. Because we find a rational basis for the distinction created in 42 U.S.C. § 416(h)(1)(B), we uphold the Secretary's denial of benefits and dismiss the complaint.

## BACKGROUND

The relevant facts of this case are not in dispute.

Joseph and Gertrude met in 1938 and began living together in Georgia at that time. R. 10. They had ten children over the next twenty-one years. R. 31. Although the couple never had a marriage ceremony, they considered themselves husband and wife under Georgia's common law marriage statute.[2]

In 1953, the couple left Georgia and moved to the Bronx. R. 33. When Gertrude applied for a Social Security wife's benefit in November 1978, Joseph submitted an application stating that he had had a prior marriage in 1920 to Janie, which had ended with her death in 1940. R. 44. Gertrude knew about that prior marriage and was told by Joseph that he and Janie had been divorced.[3] R. 19. Gertrude thereafter collected a wife's benefit, which was converted to a widow's benefit upon Joseph's death in May 1985 at the age of 93. R. 10.

Sometime in October 1985 Gertrude received the following letter from the Social Security Administration:

Your widow's benefit may be terminated as of November 1985.

The reason your claim may be terminated is because a claim has been filed by Janie Thomas as the widow of the worker.

R. 26.

Janie, who was in fact still alive, had filed a claim as Joseph's widow in July 1985.[4] In that application Janie stated that she and Joseph remained legally married even though they had separated in 1933 with no children. R. 10, 28. In support of

---

1. Because the surviving spouse benefit in this action is a widow's benefit, we will refer to it by that name throughout this opinion.

2. Gertrude previously claimed that she and Joseph were ceremonially married, although she now concedes that she is unable to prove that fact. R. 6.

3. Gertrude testified at the administrative hearing:

    ALJ: Did you know whether he has [sic] been married before, ma'am.
    Gertrude: Yes. I knew he had been married before, but he told me that they were divorced, and I accepted it at face value.

    ....
    Gertrude: I was quite young at the time and I just took what he said to be true, and at the time I was 21 and he was 45, so I can see now where I could have been very much easy to lead, to be led by what he said and I was in love with him and I just accepted what he told me, thinking everything was okay.
    ALJ: It happens when you are in love.
    Gertrude: Oh, yes Sir. But, I can see my mistake now. It's just too late.
    R. 19, 23.

4. There are many baffling questions raised in this action that are not answered by the record, including how Janie, then 83 years old and living in Georgia, learned of Joseph's death.

her claim, Janie produced a marriage license that was duly issued and certified on September 30, 1918, in Hancock County, Georgia. R. 50.

The Social Security Administration subsequently searched official records in Georgia and New York in an effort to determine which widow was entitled to the benefit. The search turned up no record of a divorce granted to Joseph and Janie and no record of a marriage license issued to or recorded on behalf of Joseph and Gertrude. R. 10.

Accordingly, the Administrative Law Judge ("ALJ") concluded that Joseph remained legally married to Janie at the time of his death and awarded her the widow's benefit. The ALJ also concluded that Gertrude was not entitled to any part of the widow's benefit because she was never legally married to Joseph nor could she be deemed his widow under § 416(h)(1)(B) because there was no evidence of a ceremonial marriage. R. 10. The Secretary then sought repayment of the $323.00 monthly widow's benefit paid Gertrude from May to November 1985. R. 68.

The ALJ's decision became the final determination of the Secretary when Gertrude's request for review by the Appeals Council was denied on December 17, 1986. R. 2. Gertrude Thomas then brought suit in this Court.

## DISCUSSION

### A. The Statute

Gertrude's only challenge to the denial of the widow's benefit is based on the constitutionality of the deemed widow provision, codified at 42 U.S.C. § 416(h)(1)(B). *See* Plaintiff's Memorandum at 1–2. In order to understand the provision at issue, it is necessary to look at the entire statutory scheme that provides for widows' benefits.

The Social Security Act provides benefits to the widows of fully-insured individuals who meet certain conditions. 42 U.S.C. § 402(e). The original statute only covered widows who would be recognized under state law:

An applicant is the ... widow ... of a fully ... insured individual ... if the courts of the State in which [such insured individual] was domiciled at the time of death ... would find that such applicant and such insured individual were validly married ... at the time [such insured individual] died.

42 U.S.C. § 416(h)(1)(A). Accordingly, this provision of the statute, known as the "legal widow" provision, recognized both ceremonial and common law marriages, as long as they were recognized by the state. On the other hand, it did not recognize marriages that the state, for whatever reason, considered invalid.

To correct what it perceived as inequities resulting from the application of this provision, Congress created what has been called "a purely 'federal' marital status test" and extended benefits to "deemed widows" in 1960. Martin, *Social Security Benefits for Spouses*, 63 Cornell L.Rev. 789, 818 (1978). The deemed widow provision states:

In any case where ... an applicant is not ... the widow [of an insured individual] but it is established to the satisfaction of the Secretary that such applicant in good faith went through a marriage ceremony with such individual resulting in a purported marriage between them which, but for a legal impediment not known to the applicant at the time of such ceremony, would have been a valid marriage, and such applicant and the insured individual were living in the same household at the time of the death of such insured individual ... then ... such purported marriage shall be deemed to be a valid marriage.... For the purposes of this subparagraph, a legal impediment to the validity of a purported marriage includes ... an impediment resulting from the lack of dissolution of a previous marriage....

42 U.S.C. § 416(h)(1)(B). Although its legislative history is scarce, Congress stated the motivation for the amendment: "Since State laws governing marriage and divorce are sometimes complex and subject to differing interpretations, a person may believe that he is validly married when he is not." S.Rep. No. 1856, 86th Cong., 2d

Sess., reprinted in 1960 U.S.Code Cong. & Admin.News 3608, 3629.

The Second Circuit similarly explained the purpose of the amendment:

> Since state family law is often confused ... many women, whose husbands paid social security taxes for years, found themselves ineligible for the benefits intended for them, because marriages contracted in good faith were subsequently found invalid. To remedy this evil, Congress in 1960 enacted subparagraph (B), permitting such women to be "deemed" wives for purposes of the Social Security Act.

*Rosenberg v. Richardson,* 538 F.2d 487, 489 (2d Cir.1976).

This action challenges the fact that the deemed widow provision grants benefits to "widows" who had invalid *ceremonial* marriages but does not grant benefits to "widows" who had invalid *common law* marriages. Put another way, Gertrude Thomas alleges that she is denied equal protection of the law because the Social Security Act recognizes ceremonial marriages, common law marriages and invalid ceremonial marriages but does not recognize invalid common law marriages.

■ As with most social welfare legislation, the statute in question is to be reviewed under the so-called rational basis test.[5] Accordingly, there is a strong presumption in favor of the validity of the statute.

### B. Is it Rational?

■ Because the brief legislative history, *supra,* does not explain why Congress chose to recognize invalid ceremonial marriages but not invalid common law marriages, we are guided by an argument presented by the Secretary:

> The burden of administering a program which recognizes situations in which individuals who live or have lived with an insured individual but who have no legal relationship to that individual would be enormous. The potential for fraudulent situations, abuse and false claims which would or could arise is literally staggering.

Defendant's Memorandum at 21. Leaving aside the fact that this argument could apply to both invalid ceremonial and invalid common law marriages, we consider the idea that Congress differentiated between the two in an attempt to reduce the possibility of fraud.

In *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court upheld a provision of the Social Security Act that requires a spouse to be married to a wage-earner for at least nine months in order to receive benefits on his account. Despite the fact that some deserving widows were denied benefits as a result of the nine-month requirement, the Supreme Court found the provision rational:

> It is ... undoubtedly true that the duration-of-relationship requirement operates to lessen the likelihood of abuse through sham relationships entered into in contemplation of imminent death. We also think that Congress could rationally have concluded that any imprecision from which it might suffer was justified by its ease and certainty of operation.
>
> . . . .

---

**5.** In *Mathews v. De Castro,* 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976) (citations omitted), the Supreme Court wrote:

> Governmental decisions to spend money to improve the general public welfare in one way and not another are "not confided to the courts. The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment." In enacting legislation of this kind a government does not deny equal protection "merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'"
>
> To be sure, the standard by which legislation such as this must be judged "is not a toothless one." But the challenged statute is entitled to a strong presumption of constitutionality. "So long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straightjacket."

While it is possible to debate the wisdom of excluding legitimate claimants in order to discourage sham relationships, and of relying on a rule which may not exclude some obviously sham arrangements, we think it clear that Congress could rationally choose to adopt such a course.... [T]he prophylactic approach thus obviate[s] the necessity for large numbers of individualized determinations....

422 U.S. at 780–81, 95 S.Ct. at 2474–75. We find this reasoning controlling in the instant action.

The deemed widow provision at issue in this action is only concerned with marriages that are invalid. Consequently, it is rational for Congress to consider claims raised under it inherently suspect. The issue, like that in *Salfi*, is whether the distinction made by § 416(h)(1)(B)—though less than perfectly tailored to the problem —is based on a rational fear that there is a greater possibility of false claims related to invalid common law marriages as opposed to invalid ceremonial marriages. We think it is.

In the first place, it is easier for a claimant to fake a common law marriage than a ceremonial one. Put another way and seen from the perspective of the Social Security Administration, it is easier to detect a false claim of a ceremonial marriage than a common law marriage. A ceremonial marriage requires documentary proof, such as a marriage license, an official and witnesses to the ceremony, that cannot be faked after the death of one of the parties. Thus, Congress reasonably might have considered an invalid ceremonial marriage to have some indicia of reliability that are not present in invalid common law marriages. Because a common law marriage—and in particular one that is not even valid—does not have the same level of formality, it can be faked more easily.

Plaintiff convincingly argues that the current regulations concerning common law marriages could be adapted to protect against false claims. *See, e.g.,* 20 C.F.R. § 404.726(b)(2) (1988) (guidelines on how to determine good faith intent to enter into a common law marriage following the death of one of the parties to that marriage). That issue, however, is not dispositive. Under the holding in *Salfi*, Congress is not required to provide for individualized determinations. *See Salfi*, 422 U.S. at 784, 95 S.Ct. at 2476 ("The administrative difficulties of individual eligibility determinations are without doubt matters which Congress may consider when determining whether to rely on rules which sweep more broadly than the evils with which they seek to deal."). The ease with which existing regulations can be adapted is, at best, probative of the rationality of Congress' fear of false claims.

Congress could also have decided to distinguish between invalid ceremonial and invalid common law marriages based on the expectations of the parties in those relationships. Parties to a ceremonial marriage have no reason to question whether the state will recognize their relationship as a valid one; their having gone through a ceremony makes it valid. On the other hand, parties to a common law marriage cannot be completely assured of the validity of their relationship until there is a subsequent judicial determination that the relationship qualifies as a marriage under the terms of a common law marriage statute. *See, e.g.,* 52 Am.Jur.2d Marriage §§ 47–52 (1970 & Supp.1989) (outlining basic elements of common law marriages). This distinction is also reflected by the fact that a ceremonial marriage can be said to begin at a set point in time while the onset of a common law marriage typically is not as easy to pinpoint.

## CONCLUSION

It is clear that § 416(h)(1)(B) is over-inclusive in that it can be used by someone who, for the sole purpose of receiving a widow's benefit, fraudulently claims that she went through a marriage ceremony in good faith. More significantly and more painfully, the deemed widow provision is under-inclusive in that it denies a benefit to a deserving person like Gertrude Thomas. These facts, however, do not amount to a constitutional violation. As the Supreme

Court has instructed us, Congress is permitted to make blanket laws with some harsh results in order to facilitate the administration of the Social Security system.

Judgment is to enter for defendant.

So ordered.