KRAMER, Associate Judge:
Appellant appeals a November 1, 1990, decision of the Board of Veterans’ Appeals (BVA) which denied him entitlement to payment of pension benefits under 38 U.S.C.A. § 1505(a) (West 1991) and 38 C.F.R. § 3.666 (1992). This Court has jurisdiction under 38 U.S.C.A. § 7252(a) (West 1991).
Appellant had active service from April 1943 to February 1946 in the Army. R. at 1. He submitted a claim for improved pension benefits in July 1988. R. at 5-8. His claim was denied by the Veterans’ Administration (now Department of Veterans Affairs) (VA) because appellant has been incarcerated in a correctional facility since 1982. R. at 12-13. Appellant has made no showing that such incarceration has not been at government expense. The statutory authority for the VA’s action is 38 U.S.C.A. § 1505(a) which provides:
No pension under public or private laws administered by the Secretary [of Veterans Affairs] shall be paid to or for an individual who has been imprisoned in a Federal, State, or local penal institution as a result of conviction of a felony or misdemeanor for any part of the period beginning sixty-one days after such individual’s imprisonment begins and ending when such individual’s imprisonment ends.
The implementing regulation, 38 C.F.R. § 3.666, likewise, provides, in relevant part:
Where any individual to or for whom pension is being paid under a public or private law administered by the Department of Veterans Affairs is imprisoned in a Federal, State or local penal institution as a result of conviction of a felony or misdemeanor, such pension payments will be discontinued effective on the 61st day of imprisonment following conviction.
Appellant challenges the constitutionality of these provisions on due process and equal protection grounds, and characterizes them as bills of attainder and ex post facto laws. Br. at 8-16.
While “[t]he Fifth Amendment ... does not [specifically] contain an equal protection clause as does the Fourteenth Amendment which applies only to the states[,] ... discrimination may be so unjustified as to be violative of due process.” Bolling v. Sharp, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). In determining whether there has been due process, the United States Supreme Court applies the same standard to the federal government that it applies to the states under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. See, e.g., Schlesinger v. Ballard, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). Under this standard, unless a classification is suspect, such as where it is predicated on race or alienage, or where it involves a fundamental right, such as vot *267 ing, it need meet only the rational basis test. See Nordlinger v. Hahn, — U.S. —, —-—, 112 S.Ct. 2326, 2331-32, 120 L.Ed.2d 1 (1992); San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973); see also Reed v. Reed, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971).
There is no authority to support the designation of prisoners as a suspect class in need of special protection from discriminatory legislation. Generally, to be suspect, the class must possess “an immutable characteristic determined solely by the accident of birth,” Frontiero, 411 U.S. at 686, 93 S.Ct. at 1770. Furthermore, the Court is unaware of any authority holding that a veteran’s pension benefit is considered such a fundamental right that it requires special constitutional protection. See Cleland v. National College of Business, 435 U.S. 213, 220, 98 S.Ct. 1024, 1028, 55 L.Ed.2d 225 (1978) (per curiam) (District Court erred when it “concluded that veterans’ educational benefits approach ‘fundamental and personal rights’ and therefore a more ‘elevated standard of review’ was appropriate”); Disabled American Veterans v. United States Dep’t of Veterans Affairs, 962 F.2d 136, 142 (2d Cir.1992). In this context, this Court notes that the Supreme Court has accorded a strong presumption of constitutionality to federal legislation governing the allocation of monetary benefits. See, e.g., Hodel v. Indiana, 452 U.S. 314, 331-32, 101 S.Ct. 2376, 2386-87, 69 L.Ed.2d 40 (1981); Schweiker v. Wilson, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981); Mathews v. DeCastro, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976); Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); see also Cleland, 435 U.S. at 221, 98 S.Ct. at 1029 (Congress has broad power to make decisions concerning how veterans benefits should be administered).
Therefore, in order to demonstrate a constitutional violation, appellant must show that the classification is arbitrary or does not bear any rational relationship to a legitimate government interest. See, e.g., Regan v. Taxation with Representation, 461 U.S. 540, 547, 103 S.Ct. 1997, 2001, 76 L.Ed.2d 129 (1983); Schweiker, 450 U.S. at 230, 101 S.Ct. at 1080; Hodel, 452 U.S. at 331, 101 S.Ct. at 2386; Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); Danridge, 397 U.S. 471, 90 S.Ct. 1153. The only case our research discovered which addresses this issue upheld the constitutionality of § 1505(a) and § 3.666. Branham v. United States of America, No. C2-89-63 (S.D.Ohio Oct. 23, 1989).
In addition, the legislative history of 38 U.S.C.A. § 1505 is instructive. See S.Rep. No. 225, 85th Cong., 1st Sess., reprinted in 1957 U.S.CODE CONG. & ADMIN.NEWS 1171, 1171-73 (Senate Committee on Finance noted that, under the current system, pension was a “gratuity” payable to veterans of World Wars I, II, and the Korean War for “non-service-connected disability coupled with need,” found no valid basis for such payment to incarcerated men, and noted that any administrative burden placed upon the VA would be offset by the savings associated with the bill); 102 Cong. Rec. H12904 (July 16, 1956) (statement of Rep. Teague) (“It should be considered that a person [who is serving a sentence] is receiving care for all of his creature comforts.”); 103 Cong.Rec. H4916, H4918 (April 1,1957) (statement of Rep. Adair) (“I see no reason why one who is in prison and is already a charge upon the State should receive further benefits.”).
Subsequent to the enactment of § 1505(a) in 1958, Congress extended restrictions on veterans’ benefits payable to incarcerated veterans to VA programs not based on need. See Pub.L. No. 96-385, § 504(a), 94 Stat. 1528, 1534 (1980) (codified as amended at 38 U.S.C.A. § 5313 (West 1991) (involving service-connected disability compensation); Pub.L. No. 96-466, § 602(a), (c), 94 Stat. 2171, 2208-09 (1980) (codified as amended at 38 U.S.C.A. § 3482(g) (West 1991) (involving education benefits). The legislative history of Public Law No. 96-466 indicates that the purpose of these restrictions was to prevent prison *268 ers from being able to purchase contraband, particularly narcotics. See, e.g., H.R.Rep. No. 498, 96th Cong., 1st Sess. 11, reprinted in 1980 U.S.Code Cong. & Admin.News 4555, 4604; see also Jackson v. Congress of United States, 558 F.Supp. 1288, 1291 (S.D.N.Y.1983).
Several courts have also upheld the constitutionality of both the provision restricting compensation, § 5313, Stewart v. Veterans’ Administration, No. 84-1730C(3) (E.D.Mo. Feb. 13, 1986); Hysell v. Curtis, No. 82-4023 (D.Kan. Aug. 27, 1982), and the provision restricting education benefits, § 3482(g), Greenwell v. Walters, 596 F.Supp. 693 (M.D.Tenn.1984); Jackson v. Congress of United States, 558 F.Supp. 1288 (S.D.N.Y.1983). No court has held either § 5313 or § 3482(g) unconstitutional. Especially in the case of the former, where a restriction on entitlement based on injury or disease incurred in service to the Nation has been upheld, it follows that a similar restriction on the payment of a benefit not based on such tangible sacrifice during such service should also be constitutional.
We hold that § 1505(a) and § 3.666 are rationally related to the legitimate government goals of the prevention of duplication of subsistence payments and of contraband purchases within prisons, and are not viola-tive of the Fifth Amendment of the Constitution.
Appellant also challenges 38 U.S.C.A. § 1505(a) and 38 C.F.R. § 3.666 as bills of attainder and ex post facto laws prohibited by the Constitution. Article I, Section 9, Clause 3 of the Constitution provides: “No Bill of Attainder or ex post facto Law shall be passed.” These constitutional prohibitions are directed to the legislative branch of government. The bill of attainder clause is “a general safeguard against legislative exercise of the judicial function, or ... trial by legislature.” United States v. Brown, 381 U.S. 437, 442, 85 S.Ct. 1707, 1711, 14 L.Ed.2d 484 (1965). The ex post facto clause focuses upon “the lack of fair notice and governmental restraint [that exists] when the legislature increases punishment beyond what was prescribed when the crime was consummated.” Weaver v. Graham, 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981). The ex post facto prohibition is also applicable to administrative regulations promulgated pursuant to delegated legislative authority under the rationale that the “legislature should not be allowed to do indirectly what it is forbidden to do directly.” Prater v. U.S. Parole Comm’n, 802 F.2d 948, 953-54 (7th Cir.1986); see also United States v. Ellen, 961 F.2d 462, 465 (4th Cir.1992). Although this Court has found no authority, we assume, given the rationale, that actions of administrative agencies are also not exempt from bill of attainder scrutiny.
In order to constitute a bill of attainder, the provision must inflict punishment upon a designated person or class of persons without the benefit of a trial. See Selective Service Systems v. Minnesota Public Interest Research Group, 468 U.S. 841, 846-47, 104 S.Ct. 3348, 3351-52, 82 L.Ed.2d 632 (1984); Nixon v. Administrator of General Services, 433 U.S. 425, 468, 97 S.Ct. 2777, 2802, 53 L.Ed.2d 867 (1977). For a measure to be an ex post facto law, it must impose punishment for past acts which were not so punishable at the time they were performed. See Jensen v. Schweiker, 709 F.2d 1227, 1230 (8th Cir. 1983) (relying on De Veau v. Braisted, 363 U.S. 144, 146, 80 S.Ct. 1146, 1147, 4 L.Ed.2d 1109 (1960)); see also Flemming v. Nestor, 363 U.S. 603, 617-21, 80 S.Ct. 1367, 1376-78, 4 L.Ed.2d 1435 (1960); Pace v. United States, 585 F.Supp. 399, 400-01 (S.D.Tex. 1984).
The Court in Branham, No. C289-63, slip op. at 10, held that § 1505(a) and § 3.666 did not constitute bills of attainder because the denial of benefits did not amount to a punishment. In Jensen v. Heckler, 766 F.2d 383, 386 (8th Cir.1985), cert. denied, 474 U.S. 945, 106 S.Ct. 311, 88 L.Ed.2d 288 (1985), a case involving a similar legislative restriction on the payment of social security benefits, the Court held that the statute was neither a bill of attainder nor an ex post facto law because the suspension of a noncontractual benefit cannot be considered a punishment. Quoting from the Supreme Court in Flemming, 363 U.S. *269 at 617, 80 S.Ct. at 1376, the Jensen court stated, “ ‘the sanction [of] the mere denial of a noncontractual benefit’ without more did not evidence a Congressional intent to punish.” Jensen, 766 F.2d at 386. Moreover, the provisions at issue provide for the apportionment to the veterans’ spouse or children of the pension otherwise payable to the veteran, and, more importantly, allow for the resumption of the payment of pension to the veteran upon release from incarceration. 38 U.S.C.A. § 1505(b); 38 C.F.R. § 3.666(a)(c); see Selective Service, 468 U.S. at 853, 104 S.Ct. at 3355. Last, for the reasons already stated, the restriction on the payment of pension benefits mandated by § 1505(a) and § 3.666 bears a rational connection to, and furthers, non-punitive legislative goals. Id. at 854, 104 S.Ct. at 3356.
We hold that § 1505(a) and § 3.666 are not bills of attainder or ex post facto laws violative of Article I, Section 9, Clause 3 of the Constitution.
The decision of the BVA is AFFIRMED.